Duane HAMMONS, Appellant

v.

The STATE of Texas.

No. PD–0307–07.

Court of Criminal Appeals of Texas.

Nov. 14, 2007.

Mark Stevens, San Antonio, for Appellant.

Enrico B. Valdez, Asst. District Atty., San Antonio, Jeffrey L. Van Horn, State's Atty., Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the unanimous Court.

Appellant was charged with sexual assault and indecency with a child for having consensual sexual relations with Nailah, a minor. Appellant did not deny having such a relationship, but his defense was that Nailah was at least seventeen years old at the time. The trial court admitted, over appellant's objection, several out-of-court statements made by Nailah to two different witnesses as prior consistent statements under Tex.R. Evid. 801(e)(1)(B). After appellant was convicted, he appealed and claimed that the trial court erred in admitting these statements. The court of appeals agreed.[1] We granted review to clarify that, under Rule 803(e)(1)(B), a charge of recent fabrication or improper motive may be subtly *implied* through tone, tenor, and demeanor during the entirety of the cross-examination; such an attack may not be immediately apparent from the specific wording of the questions asked, but becomes obvious only during the attorney's final argument.[2] We hold that the trial court did not abuse its discretion in admitting the evidence as a prior consistent statement.

## I.

Nailah, who was twenty-seven at the time of trial, testified that she was born on October 12, 1977. When she was twelve and in middle school, she joined the adult choir at her church. Her grandfather was an elder in that church and her grandmother was a district missionary. Tina Hammons, who was related to Nailah's family, was the state choir director. Nailah met appellant, Tina's husband, through her choir activities. Appellant, who was in his late 20's or early 30's at the time, became her counselor. He counseled her by phone.

Nailah testified that she was almost fifteen when she started high school at Business Careers High School, a magnet school for the gifted. She talked with appellant every week or two on the phone for five to fifteen minutes, but shortly after starting high school, he would call more frequently. Nailah was self-conscious because she was "hairy," but appellant said "not to worry, that later on in life, [she] would find out that that was sexy and that a lot of men liked that." Nailah testified that appellant would tell her things like "how pretty I was and how smart I was and how special I was. How special I was to him."

Appellant told Nailah that he wanted to pick her up at school and take her out to lunch to celebrate her 15th birthday in October of her freshman year. She signed out from school for a dentist appointment and was supposed to meet him in the school parking lot, but she did not go. She stayed inside with her best friend, Yvonne Sanders, who was a sophomore. She told

---

1. *Hammons v. State,* 221 S.W.3d 720, 725 (Tex.App.-San Antonio 2007).

2. The State's two grounds for review ask,
   1. Whether the court of appeals erred in concluding that the defense's cross-examination of the complainant regarding inconsistencies between her prior testimony given during a civil deposition based on the conduct and her testimony at trial in the criminal case was insufficient to constitute an implied charge of recent fabrication or improper influence or motive under Rule 801(e)(1)(B).
   2. Whether the court of appeals erred in concluding that the admission of the complainant's statement from other witnesses was harmful when the same evidence was admitted through the testimony of the complainant without objection.
   Because we resolve the first ground for review in favor of the trial court's ruling, we *need not address the second ground.*

Yvonne that she was supposed to go out for lunch with her counselor, but she didn't feel "good" about it, so she did not want to go. The two girls just stood and looked at appellant sitting in his car in the parking lot. She had told Yvonne bits and pieces about her relationship with appellant, but "I didn't give her intimate details because I didn't have any friends so I didn't know, really, if I could tell anybody. So I just kind of told her that there was an older man I thought liked me."

Appellant made arrangements to see her again about a week later. This time Nailah went out for lunch with him. They went to the Hampton Inn on I–35. Appellant said that he had gotten a room there for an earlier business meeting and to take a shower and freshen up. She wanted to stay in the car, but appellant talked her into going to the motel room with him. He went into the bathroom and then came back out clad only in a towel and asked Nailah to give him a massage with lotion. She did. Things progressed, and eventually he penetrated her, first with his finger, then with his penis. It hurt, and she tried to resist. Then they each took a shower, and he drove her back to school.

Appellant called Nailah about a month or two later and asked her to go out for lunch again. This time they went to the Scotsman's Inn on I–35, and appellant repeated his prior conduct. Nailah hadn't told anybody because, she said, "I was scared. I was ashamed. I was confused." According to Nailah, their third act of intercourse took place at a Motel 6 in early 1993, while Nailah was still a freshman in high school. This time appellant's car wouldn't start when they were ready to leave; appellant was "panicky," and Nailah "freaked" out. He called a cab for her to get back to school.

The only person that Nailah told about these sexual interludes was Yvonne. She told Yvonne the details when the girls had a "sleep-over" at Nailah's house sometime after Christmas during Nailah's freshman year. The next fall, right after her 16th birthday, Nailah transferred to Judson High School because her mother became pregnant and did not want Nailah going to school so far away. Yvonne was still at Business Careers.

The fourth time appellant picked her up at school, this time from Judson High School, he took her to a "really nasty" motel, and she refused to get out of the car. The fifth time, they went to the Ruby Inn, and Nailah told appellant that she had a boyfriend. Appellant was a little upset and told her, "I'm the only person that loves you and so you better not be having sex with anyone else." They had their usual sexual activity, but appellant was rough and angry, "real rude, real obnoxious." This was their last encounter.

Nailah eventually told her mother about the liaison with appellant in mid–1997, when she was nineteen. There was a meeting with Nailah, her mother and father, her grandparents, appellant and his wife. Nailah told everyone that it started when she was a freshman at Business Careers High School. Appellant said it was true, and he cried. Nailah and her family decided to have another meeting with appellant and his wife, which was held at the church with Bishop Iglehart and several elders in attendance. Appellant again admitted the sexual affair; he apologized to his wife and the bishop. The elders told Nailah that the church would handle the matter, so neither she nor her family reported it to the police.

Around 2002, Nailah received a bag of clothes containing a T-shirt that had appellant's name on it as the vice-president of the youth department. Nailah then realized that appellant was still pastoring children, so she filed a police report. She also

filed a civil lawsuit against the church and appellant, but it was dismissed shortly before the criminal trial because the statute of limitations had run.

Appellant's attorney cross-examined Nailah vigorously concerning her memory of dates, the specific motels she and appellant had gone to at which times, and her age during which year of high school. Both became confused. Appellant's attorney also cross-examined Nailah about how she had given different dates during her deposition in the civil lawsuit. Nailah said that she was incorrect in her former testimony because her lawyer had suggested those dates and he was wrong.

Bishop Iglehart testified next and stated that he had received a letter from Nailah in 1997, so "[w]e did a preliminary investigation, we ascertained that the facts were reasonably sure and correct, and then we began to set up a deliberation." The elders convened a meeting in January or February of 1998. Bishop Iglehart questioned Nailah about the allegations she had made in her letter and she provided detailed and explicit information. The trial prosecutor then asked Bishop Iglehart the following question:

Prosecutor: All right. And was it made clear to you during that time what her age was during the time—during the time that she says she was having sex—or Duane Hammons was having sex with her?

Defense: I'll object to that as calling for hearsay.

Prosecutor: Judge, at this time we'd ask that it be allowed as a prior consistent statement. The defense has clearly questioned the credibility of Nailah and has suggested that she is confused about her age. This comes in as nonhearsay under 801 and [a] prior consistent statement by the witness.

Defense: I don't think she laid the predicate for that, Judge.

Prosecutor: The only predicate is that he did the initial questioning.

Court: Okay. I'll overrule the objection. You can answer.

The prosecutor continued her questioning:

Q: The question was, when Nailah spoke to you-all at the meeting, was she clear about her age when [appellant] started having sex with her?

A: She was clear.

Q: Okay. And was she at that—when she talked to you about that, was it clear to you whether she was over 17 or under 17?

A: At the time we had that meeting, the only reason we were there was because she was under 17 at that time.

[Defense objection to hearsay. The trial court overruled the objection, but allowed a running objection.]

Q: All right. Bishop, you said that if she had been over 17 there wouldn't have been a reason to have a meeting. Why do you say that?

A: Because that [sic] if she had been considered an adult, there would have been nothing that we would have been able to do about it.

According to Bishop Iglehart, appellant "confessed that he did it."

Yvonne also testified and confirmed that she and Nailah had been best friends when Nailah was a freshman at Business Careers. Nailah always dressed like she was going to church and did not have many friends. In fact, Yvonne was her only friend. The prosecutor then asked Yvonne if Nailah had spoken to her about an older man. Yvonne said, "Yes, she did." The prosecutor continued, "[C]an you tell me what [Nailah] would tell you in the begin-

ning about this older man?" Appellant's attorney objected on the basis of hearsay. The prosecutor responded,

> Judge, under 801 he has questioned this victim's credibility on several issues, and that is a prior consistent statement; therefore, not hearsay. We would ask that the Court admit it.

The trial court overruled the objection, and Yvonne said that Nailah told her "bits and pieces" about her relationship with an older man in her church all throughout her freshman year, though she never mentioned the man's name. After appellant made a running objection to hearsay, Yvonne elaborated on Nailah's disclosures to her. She said that one rainy day in October, Nailah was outside in the little lunch area circle, looking like she wanted to cry. Yvonne asked her what the matter was, and Nailah told her that "he" was coming to get her. "And I was like, Who's coming to get you? And she was like, The guy that I was telling you about. . . . But I don't want to go." Yvonne remembered the two of them looking across the parking lot where a dark car was parked. Yvonne didn't see the man, but she told Nailah that she didn't have to go if she didn't want to. Yvonne didn't remember exactly what happened after that, but she did know that Nailah didn't go with the man.

Yvonne testified that she found out more about the man when she spent the night at Nailah's home some time after Christmas break. Nailah told her "detail, point-to-point things."

> I know she told me that they had been having sex and [she] had told him she didn't like it, that she didn't want to do it, and she had told him that she wanted him to leave her alone. And he wouldn't leave her alone. And she couldn't tell anybody because it would get the church in trouble, her parents, her grandpar-

ents—you know, it would hurt everybody[.]

Nailah said that these encounters were in a "hotel, motel, whatever." Yvonne testified that Nailah transferred out of Business Careers shortly after the beginning of her sophomore year. Yvonne also transferred to a different high school later that year, but the two have remained friends over the years. She said that she had not heard about this case until the defense investigator called her.

The defense then presented evidence that the Hampton Inn on I–35—where Nailah testified that she and appellant had their first sexual encounter—had not been built or open for business until May, 1995. Nailah would have been seventeen years old at that time.

Appellant's closing argument included the following:

> [Nailah] tried to list these dates, but her dates didn't coincide with the dates she gave in her prior statements, which were given just four months ago in this deposition, that I cross-examined her from. You remember that. How could you forget it. How could you forget her testimony. How could you forget her talking about, "My lawyer gave me these dates." That's manufacturing evidence. That's conspiring to manufacture evidence in the courtroom. That's a criminal charge, that's a criminal offense. I'm incensed by that. I can't believe she testified to that up here in front of you.

The defense emphasized that Nailah testified that the first encounter—in 1992—was in the Hampton Inn, but that the motel was not built until 1995. That meant

> that it couldn't have happened like that, like she said, at the time she said, and by her own testimony she made up dates with her lawyer.

This is one of those—remember, I talked to you about the preponderance of the evidence, but these are the guys that—you know, the rich lawyers that sue people and raise your insurance rates. Remember, we talked about that? Well, that's one of these guys who sued my client. It didn't work because it's no good. The evidence is no good in this case. This case was thrown out, the civil case. And now she's angry because she didn't get any money. And this is now about a criminal case. That's getting revenge.

When the defense attorney discussed Yvonne's testimony, he noted that she and Nailah were still best friends and still talked together.

Well, if they talked, what do you think the biggest thing going on in [Nailah's] life was? This case coming up and her civil case, which was in January, that got dismissed two or three weeks ago. So what did she—you know you've got to stick with me on this, Yvonne. Come on, got to be with me. Think about it. That's your reason. When you think about the credibility and about why a person might testify one way or the other, think about those things.

Concerning Bishop Iglehart's testimony, the defense stated the following:

So what did they prove? It's not relevant what the bishop heard from her, because the testimony comes from her. And you got to believe her testimony to believe she was a minor. And to believe that, you got to believe she wasn't lying

in this deposition; she wasn't lying in the police statement, where she gave another date, when she gave these other dates; and then when she finally said, We made them up, we made up these dates so we could get some money.

The jury found appellant guilty and sentenced him to ten years' imprisonment and a $10,000 fine, but they recommended community supervision.

On appeal, appellant claimed, *inter alia*, that the trial court erred in overruling his hearsay objections to Bishop Iglehart's and Yvonne's testimony about Nailah's out-of-court statements to them.[3] The court of appeals stated that, although hearsay is generally not admissible, a prior consistent statement is not hearsay if it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive."[4] The court of appeals held that a proper predicate must be laid that "illustrates a charge of fabrication has been made."[5] Then, "the prior consistent statement must have been made at a time before the declarant had a motive to testify falsely."[6] The court of appeals stated that merely questioning "a witness's recollection of events or dates through rigorous cross-examination does not equate to a charge of fabrication. To hold otherwise subjects all defendants who challenge the memory of prosecution witnesses to the improper admission of prior consistent statements."[7] The court of appeals rejected the State's argument that appellant's cross-examination[8] suggested both

---

3. *Hammons v. State*, 221 S.W.3d 720, 723 (Tex.App.-San Antonio 2007).

4. *Id.* at 724 (quoting TEX.R. EVID. 801(e)(1)(B)).

5. *Id.*

6. *Id.*

7. *Id.*

8. The State pointed to the following cross-examination of Nailah as one example of appellant's suggestion of recent fabrication:

Q: Well the dates mix you up, don't they?
A: I know the place and I know the age I was. And I was underage.

recent fabrication and improper influence or motive, and held that the trial court erred in admitting Bishop Iglehart's and Yvonne's hearsay testimony. Finding that error harmful, the court of appeals reversed appellant's conviction and remanded the case for a new trial.[9]

## II.

Rule 801(e)(1)(B) gives substantive, non-hearsay status to prior consistent statements of a witness "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." [10] We have previously stated that our rule mirrors that of Federal Rule 801(d)(1)(B) and thus federal decisions provide helpful analysis.[11] The Supreme Court has explained the four requirements that must be met for prior consistent statements to be admissible under Federal Rule 801(d)(1)(B):

(1) the declarant must testify at trial and be subject to cross-examination;

(2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony by the opponent;

(3) the proponent must offer a prior statement that is consistent with the declarant's challenged in-court testimony; and,

(4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.[12]

The rule sets forth a minimal foundation requirement of an implied or express charge of fabrication or improper motive.[13] It is minimal. Dean McCormick has noted that even an attack upon the accuracy of the witness's memory might suffice to permit the introduction of a prior consistent statement.[14] In any event, "there need be only a suggestion that the witness consciously altered his testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial." [15] The fact that "there need be

---

Q: You know that, right? *Your lawyer tell you that you knew that?* [Emphasis added.]
A: No, he didn't have to tell me that.

**9.** *Hammons,* 221 S.W.3d at 727.

**10.** Tex.R. Evid. 801(e)(1)(B).

**11.** *Campbell v. State,* 718 S.W.2d 712, 716–17 (Tex.Crim.App.1986) ("When the new Rules of Criminal Evidence were promulgated, a decision was made to adopt the wording of Fed. Rule 801(d)(1)(B), supra, for Tex.R. Cr. Evid. 801(e)(1)(B), supra. The intent was to adopt not only the wording of the Federal Rule but its interpretation as well.").

**12.** *See Tome v. United States,* 513 U.S. 150, 156–58, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995).

**13.** *See* Michael H. Graham, *Prior Consistent Statements: Rule 801(d)(1)(B) of the Federal Rules of Evidence, Critique and Proposal,* 30 Hastings L.J. 575, 607 (1979) (suggesting that the question, "Didn't you talk with plaintiff's

counsel shortly before testifying here today?" is sufficient to raise an implied charge of fabrication); *see also United States v. Hamilton,* 689 F.2d 1262, 1273 (6th Cir.1982) (noting that defense counsel's attack on a witness need not have been intended to imply recent fabrication as long as the jury might infer the charge from the manner of questioning); *United States v. Baron,* 602 F.2d 1248, 1253 (7th Cir.1979) ("The fact that defense counsel may not have intended to imply that [witness's] story was fabricated is irrelevant if that inference fairly arises from the line of questioning he pursued.").

**14.** 1 Charles T. McCormick, McCormick on Evidence § 47, at 178 n. 18 (John W. Strong ed., 4th ed. 1992) ("If the witness's accuracy of memory is challenged, it is arguable that a consistent statement made shortly after the event and before he had time to forget, could be received in support.").

**15.** *United States v. Casoni,* 950 F.2d 893, 904 (3d Cir.1991); *see McInnes v. Yamaha Motor*

only a suggestion" of conscious alteration or fabrication gives the trial court substantial discretion to admit prior consistent statements under the rule.[16] However, the rule cannot be construed to permit the admission of what would otherwise be hearsay any time a witness's credibility or memory is challenged.[17] Were that true, mere cross-examination would always turn the prior consistent statement into non-hearsay.[18] There is no bright line between a general challenge to memory or credibility and a suggestion of conscious fabrication, but the trial court should determine whether the cross-examiner's questions or the tenor of that questioning would reasonably imply an intent by the witness to fabricate.[19]

Corp., U.S.A., 673 S.W.2d 185, 189 (Tex.1984) (defense had, during voir dire, opening statement, and cross-examination "insinuated" that witness had recently fabricated his testimony that the "wobble" or "shimmy" of his motorcycle had caused the accident); Dowthitt v. State, 931 S.W.2d 244, 264 (Tex.Crim. App.1996) (cross-examination of accomplice witness "raised an implied charge that [witness] fabricated his testimony specifically because of the plea bargain"); Moody v. State, 827 S.W.2d 875, 893 (Tex.Crim.App.1992) (prior consistent statement was admissible to rebut implied charge of recent fabrication when defense cross-examination suggested that sexual assault victim's mother "was getting her to make the allegation" and that child had not informed mother of the alleged assault for a long time); Wisdom v. State, 143 S.W.3d 276, 281 (Tex.App.-Waco 2004, no pet.) (when cross-examination "raised an inference of recent fabrication" or that the prosecutor, child witness's mother or shooting victim had improperly influenced child's testimony, trial court properly admitted prior consistent statement).

**16.** See United States v. Frazier, 469 F.3d 85, 88 (3d Cir.2006), cert. denied, — U.S. —, 127 S.Ct. 1925, 167 L.Ed.2d 577 (2007); Lawton v. State, 913 S.W.2d 542, 561 (Tex.Crim. App.1995) (prior consistent statement was admissible because defense counsel questioned witness during cross-examination about the preparations he and the district attorney had undertaken for his trial testimony; defense "never flatly accused [witness] of fabricating his testimony with the State's assistance, but it was clearly implied that [witness's] testimony was influenced by the district attorney's tutelage."); see also State v. Johnson, 220 Neb. 392, 370 N.W.2d 136, 141 (1985) (upholding admission of prior consistent statement because "defense counsel had sown the sinister seed of innuendo" that testimony had

been fabricated). In Johnson, the court stated:

> If an attack on a witness' credibility through use of an inconsistent statement is accompanied by, or interpretable as, a charge of a plan or contrivance to give false testimony, proof of a prior consistent statement before the plan or contrivance was formed tends "strongly to disprove that the testimony was the result of contrivance.... It is for the judge to decide whether the impeachment amounts to a charge of contrivance, and ordinarily this is the most obvious implication."

Id. at 142 (emphasis added) (citing McCORMICK ON EVIDENCE § 49 at 119–20 (E. Cleary 3d ed.1984)).

**17.** Tome, 513 U.S. at 157–58, 115 S.Ct. 696 ("Prior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited.... The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told."); United States v. Bishop, 264 F.3d 535, 548 (5th Cir. 2001).

**18.** Bishop, 264 F.3d at 548.

**19.** See United States v. Ruiz, 249 F.3d 643, 648 (7th Cir.2001) (cross-examination raised implication that officer's testimony as to what he saw defendant do on the night of his arrest was "fictional" by pointing out that officer had not noted in his incident report some of the observations to which he testified); United States v. Lozada–Rivera, 177 F.3d 98, 104 (1st Cir.1999) (stating that "a charge of improper motive or recent fabrication need not be expressly made or buttressed by concrete evidence. But the proponent of evidence must point to specific questions during his adversary's examination that suggest recent fabrication or bias. Merely appealing to credibility as a live issue will not do the trick.");

Furthermore, the fact that the State might "bring out its own uglies" on direct examination in anticipation of an attack on a witness's credibility does not preclude the introduction of a witness's prior consistent statement as rebuttal evidence after a witness has, in fact, been impeached on cross-examination with an express or implied accusation of recent fabrication.[20]

■ As with most evidentiary rulings, a trial court's determination that a prior consistent statement is admissible because the cross-examination suggested or implied an assertion of recent fabrication or improper motive is reviewed only for an abuse of discretion.[21]

---

*United States v. Street,* 66 F.3d 969, 977 (8th Cir.1995) (trial court properly admitted prior consistent statement under rule; noting that, on cross examination, defendant brought out that, in his grand-jury testimony, witness had not stated that defendant had made obscene statements, and concluded this line of questioning by asking, "And so your feeling today, and your memory today, is better than when you testified in front of the grand jury two weeks after this incident happened?" When the witness replied that, after reviewing a written report he prepared shortly after the incident and before his grand-jury testimony, it was more complete, defense asked whether witness had "exaggerated on other statements as well?" This amounted to a suggestion of recent fabrication); *Wylie v. State,* 908 S.W.2d 307, 310 (Tex.App.-San Antonio 1995, pet. ref'd) (videotaped interview of child victim was admissible as a prior consistent statement when "defense counsel presented intense and very capable cross examination of the complainant and other witnesses, raising doubts as to fabrication and improper influence upon the complainant.").

**20.** *Bolden v. State,* 967 S.W.2d 895, 898–99 (Tex.App.-Fort Worth 1998, pet. ref'd) (witness's prior consistent statement was properly admitted after defendant's counsel implied on cross-examination that the witness's motive for testifying was a promise for assistance with the parole board; "The fact that the State framed its direct of [witness] to defuse appellant's anticipated attempt to impugn [witness's] motives did not deprive the State of the right to rehabilitate [witness] with the prior consistent statement."); *see United States v. Montague,* 958 F.2d 1094, 1096 (D.C.Cir.1992); *United States v. Brennan,* 798 F.2d 581, 588 (2d Cir.1986) (government's " 'impeachment' of its own witness" does not prevent it from responding to defendant's impeachment of the same witness); *United States v. Allen,* 579 F.2d 531, 532–33 (9th Cir.1978) (government may rebut charge of recent fabrication even where such charge is suggested by the government's evidence, so long as the government's evidence is not introduced merely to enable the bolstering of its case with prior consistent statement). In *Montague,* the court stated that the defendant argued that there was not a proper foundation to admit the prior consistent statement:

> He asserts that there was no express or implied charge of recent fabrication, or improper influence or motive to be rebutted. The government rightly counters that defendant's trial counsel, during her cross examination of [the witness], questioned him concerning his guilty plea and his hope for leniency. We agree with the trial judge that this constitutes at the very least an "implied charge ... of ... improper ... motive," as required by Rule 801(d)(1)(B). The record bolsters our confidence in this conclusion by disclosing that the United States offered to withhold tender of the prior statement if the trial counsel would agree not to argue in closing to the jury that [the witness] hoped by his testimony to influence the sentencing judge toward leniency. Trial counsel declined the government's offer. The trial court admitted the statement. The defense did use the argument of improper motive in closing.

958 F.2d at 1096. Thus, the assertion, during closing argument, that the witness's testimony was affected by an improper motive, may confirm the correctness of the trial court's decision to admit a prior consistent statement.

**21.** *Lawton v. State,* 913 S.W.2d at 561 (upholding admission of prior consistent statement because "it is far from clear that the trial court abused its discretion."); *Wisdom v. State,* 143 S.W.3d at 280–81 (stating that "we can discern no abuse of discretion in the court's decision to admit the prior statement to rebut the inference of recent fabrication or

## III.

■ In the present case, appellant argues that "no fair reading of this record ... supports the state's assertion that the defense made any" charge of recent fabrication of improper motive. According to appellant, the State relied upon a single cross-examination question by defense counsel ("Your lawyer tell you that you knew that?" referring to the date of her first sexual encounter with appellant as a time before her seventeenth birthday) as raising a charge of recent fabrication. But, as the State explained,

> This question made clear what had already [been] implied by defense counsel's earlier questions—that [Nailah's] lawyer had given her the dates to establish that she was underage at the time of the incidents and that she was lying when she testified that she was underage to make her case in the civil suit.[22]

Appellant argues that he was merely bringing out Nailah's inconsistency on dates. "The state is simply wrong when it accuses the defense of making it 'clear' that the complainant had been improperly influenced or motivated by her civil law-

yer."[23] Appellant asserts that "the prior consistent statement rule did not apply because the defense did not charge the complainant with improper fabrication, motive, or influence."[24]

But appellant's assertion that he did not imply that Nailah fabricated her testimony is refuted by his own closing argument in which he expressly accused Nailah of "manufacturing" evidence with her civil attorney, noted that it is a criminal charge to manufacture evidence, and stated that the civil case was "thrown out," and "now she's angry because she didn't get any money. And this is now about a criminal case. That's getting revenge." He concluded with the assertion that Nailah "made up" the dates so she "could get some money." It is crystal clear that appellant's position, at the time of final argument, was that Nailah had unsuccessfully conspired with her civil attorney to fabricate dates that would support her civil lawsuit, and, having lost that lawsuit, she would wreak revenge at this criminal trial by fabricating even more different dates than the ones to which she had testified during her civil deposition.[25]

improper influence."); *Perez v. State*, 994 S.W.2d 233, 236 (Tex.App.-Waco 1999, no pet.) ("We cannot say that the court abused its discretion in admitting the prior [consistent] statements."); *Campos v. State*, 977 S.W.2d 458, 462 (Tex.App.-Waco 1998, no pet.) ("We do not find that the court abused its discretion in admitting the [prior consistent] statement."); *Bolden v. State*, 967 S.W.2d 895, 898 (Tex.App.-Fort Worth, 1998, pet. ref'd) ("The trial court's determination of the admissibility of evidence under Rule 801(e)(1)(B) is reviewed under an abuse of discretion standard."); *see also United States v. Lawson*, 872 F.2d 179, 183 (6th Cir.1989); *United States v. Zito*, 467 F.2d 1401, 1404 (2d Cir.1972) ("A trial judge normally has great discretion in determining if a prior consistent statement is authorized to rebut a defense charge of recent fabrication.").

22. State's Brief at 15.

23. Appellant's Reply Brief at 13.

24. Appellant's Reply Brief at 14.

25. *See, e.g., State v. Brotherton*, 384 N.W.2d 375, 380 (Iowa 1986) ("Defendant's claim that he was not making any charge of recent fabrication, improper motive or influence is not borne out by our examination of the record."; noting that parts of the cross-examination of the child victim specifically related to such matters as the mother prompting and preparing her for trial, her present memory, and whether she made up the story elicited on direct examination); *United States v. Zito*, 467 F.2d 1401, 1404 (2d Cir.1972) (review of defense opening statement and "persistent inquires" during cross-examination about witness's many prior crimes "suggested to the jury that [the witness] hoped for clemency ... and that his trial testimony was a fabrication as a reward for which he hoped to go un-

The court of appeals "conclude[d] the State failed to lay 'a proper predicate ... that illustrates a charge of fabrication has been made.'" [26] The court of appeals is correct that the State's explanation to the trial judge of precisely how the defense had implied that Nailah was fabricating portions her testimony was cryptic at best. However, the State cannot lay a proper predicate for the admission of a prior consistent statement. That predicate is laid by the content, tone, and tenor of defense cross-examination. It either does or does not "open the door" to the admissibility of a prior consistent statement by an express or implied suggestion that the witness is fabricating her testimony in some relevant respect. In deciding that question, the trial court must consider the totality of the cross-examination, not isolated portions or selected questions and answers.

The specific words that appellant used during cross-examination might be interpreted as either a benign inquiry into Nailah's confusion over the dates and locations where the sexual encounters took place or as an implied charge of recent fabrication. But much of the force of cross-examination depends upon the tone and tenor of the questioning, combined with the cross-examiner's demeanor, facial expressions, pregnant pauses, and other nonverbal cues.[27]

In this case, the State responded to appellant's hearsay objections with the assertion that "[t]he defense has clearly questioned the credibility of Nailah and has suggested that she is confused about her age. This comes in as nonhearsay under 801 and [a] prior consistent statement by the witness." Although the State's response was certainly cryptic, the trial judge clearly understood its position, and he, assessing not only the words spoken on cross-examination, but its tone, tenor, and nonverbal cues, agreed. Although the questioning was subtle, the trial judge did not abuse his discretion in concluding that appellant was making an implied charge of fabrication during his cross-examination.[28] That subtly implied charge became vociferously express during appellant's closing argument. At that point, the "sinister seed of innuendo" sowed during cross-examination came to full fruition.[29]

Thus, we note that a reviewing court, in assessing whether the cross-examination of a witness makes an *implied* charge of recent fabrication or improper motive, should focus on the "purpose of the impeaching party, the surrounding circumstances, and the interpretation put on them by the [trial] court." [30] Courts may also consider clues from the voir dire, opening statements, and closing arguments. From the totality of the questioning, giving deference to the trial judge's assessment of tone, tenor, and demeanor,

whipped of justice.") (quoting *People v. Singer*, 300 N.Y. 120, 89 N.E.2d 710, 711 (1949)).

26. *Hammons*, 221 S.W.3d at 725 (quoting *Campbell v. State*, 718 S.W.2d 712, 715, 717 (Tex.Crim.App.1986)).

27. *See* 4 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 406 at 183 (2d ed.1994) (noting that sometimes the cross-examiner's attack openly suggests that the witness "is bent on some purpose other than telling the truth," but stating that "sometimes the attacking party leaves these points just

below the surface, and relies instead on innuendo or the suggestive force of questions or underlying facts to carry the message").

28. *See Lawton v. State*, 913 S.W.2d 542, 561 (Tex.Crim.App.1995); *Wisdom v. State*, 143 S.W.3d 276, 281–82 (Tex.App.-Waco 2004, no pet.).

29. *State v. Johnson*, 220 Neb. 392, 370 N.W.2d 136, 141 (1985).

30. MUELLER & KIRKPATRICK, FEDERAL EVIDENCE § 406 at 187.

could a reasonable trial judge conclude that the cross-examiner is mounting a charge of recent fabrication or improper motive?[31] If so, the trial judge does not abuse his discretion in admitting a prior consistent statement that was made before any such motive to fabricate arose.[32]

We therefore hold that the trial court did not abuse its discretion in admitting Nailah's prior consistent statements to Bishop Iglehart and Yvonne. The judgment of the court of appeals is reversed, and the case remanded for the court of appeals to address appellant's remaining claims.

**31.** *See United States v. Feldman,* 711 F.2d 758, 766 (7th Cir.1983) (reviewing court looked to defense opening argument, to content of cross-examination, to trial court's repeated questioning of defense counsel *concerning his purpose in cross-examination* inquiries, to the fact that defense counsel declined to agree that he would not argue "fabrication" during his closing argument, and to the fact that defense counsel *did* argue fabrication during his argument to hold that trial court properly admitted prior consistent statement; "While the government was the first to broach the issue of the plea agreement, we agree with the district court that [defendant's] use of the plea agreement was to impliedly charge that it motivated [witness] to fabricate his trial testimony.").

**32.** *Lawton,* 913 S.W.2d at 561 (upholding trial judge's admission of prior consistent statement because "it is far from clear that the trial court abused its discretion"); *see also Thomas v. United States,* 41 F.3d 1109, 1119–

20 (7th Cir.1994) (when impeachment questioning is subject to either a suggestion of fabrication or to an attack upon general credibility, trial judge does not abuse his discretion in ruling on the admissibility of a prior consistent statement).

Appellant argues, in his Reply Brief that the "temporal requirement" of the rule also was not met because Nailah had already repeated her story to several people before she told the elders at the official church meeting and thus she had a motive to continue to repeat it for the sake of consistency. This is not the motive to fabricate that he ascribed to Nailah at trial. At trial, appellant expressly argued that Nailah fabricated the dates of their sexual encounters to wreak revenge for her recently dismissed civil lawsuit. The civil lawsuit was, of course, dismissed years after she had made her out-of-court statements to either Bishop Iglehart during the elders' meeting or to Yvonne during her freshman year in high school.