In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00131-CR


______________________________




JASON BLAKENEY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 4th Judicial District Court


Rusk County, Texas


Trial Court No. 2009-094




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Jason Blakeney has filed an attempted appeal from a ruling denying his petition seeking a
"Bill of Review" of his 2002 criminal conviction for murder, claiming that the judgment should be
set aside because counsel offered to pay him the sum of $8,000.00 for pleading guilty, which sum
was not paid, and therefore fraud was committed against him. 

 The right to appeal is conferred by the Legislature. Rushing v. State, 85 S.W.3d 283, 286
(Tex. Crim. App. 2002). A party may appeal only that which the Legislature has authorized. Marin
v. State, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993); Galitz v. State, 617 S.W.2d 949, 951 (Tex.
Crim. App. 1981). 

 The Legislature has limited available collateral post-conviction remedies to that of habeas
corpus, pursuant to Article 11.07 of the Texas Code of Criminal Procedure through the Texas Court
of Criminal Appeals. Tex. Code Crim. Proc. Ann. art. 11.07 (Vernon Supp. 2008). The Texas
Court of Criminal Appeals and lower courts have recognized that "the exclusive post-conviction
remedy in final felony convictions in Texas courts is through a writ of habeas corpus pursuant to
Tex. Code Crim. Proc. [Ann.] art. 11.07." Olivo v. State, 918 S.W.2d 519, 525 n.8 (Tex. Crim.
App. 1996); accord In re Harrison, 187 S.W.3d 199, 200 (Tex. App.--Texarkana 2006, orig.
proceeding). 

 Further, there is authority explicitly holding that the equitable bill of review has no
application in a criminal case. Ex parte Williams, 165 Tex. Crim. 130, 303 S.W.2d 403, 405 (1957),
overruled on other grounds by Ex parte Taylor, 522 S.W.2d 479 (Tex. Crim. App. 1975); Collins
v. State, 257 S.W.3d 816 (Tex. App.--Texarkana 2008, no pet.); see McLean v. State, 146 Tex.
Crim. 95, 171 S.W.2d 889, 890 (1943) (holding that bill of review has no application to criminal
cases and only available remedies are appeal or resort to writ of habeas corpus).

 The notice of appeal is not from a judgment of conviction--but from the denial of a bill of
review. We have reviewed the order at bar and can find no authority permitting us to conclude that
it is a type of order which the Legislature has set out as being appealable, and the authorities cited
above mandate to the contrary. We therefore have no jurisdiction over the appeal.

 We dismiss the appeal for want of jurisdiction.



 Bailey C. Moseley

 Justice


Date Submitted: June 25, 2009

Date Decided: June 26, 2009


Do Not Publish




based on the child's
interaction with other people, subsequent to the outcry. 

 This is offered, to rebut that defensive theory.


The trial court overruled Werner's objection, ruled the video admissible, and viewed it. The video
interview, it bears pointing out, contains statements by Janie which conformed with her in-court
testimony, alleging (as in her live testimony) that Werner put his "pee pee" or "private" in her mouth. 

 The Texas Court of Criminal Appeals has adopted the following criteria in evaluating
whether a particular statement is excluded from the realm of hearsay pursuant to Rule 801(e)(1)(B)
of the Texas Rules of Evidence:

 (1) the declarant must testify at trial and be subject to cross-examination;

 

 (2) there must be an express or implied charge of recent fabrication or
improper influence or motive of the declarant's testimony by the opponent;

 

 (3) the proponent must offer a prior statement that is consistent with the
declarant's challenged in-court testimony; and,

 

 (4) the prior consistent statement must be made prior to the time that the
supposed motive to falsify arose.


Hammons v. State, 239 S.W.3d 798, 804 (Tex. Crim. App. 2007). (4)
 The Texas Court of Criminal
Appeals' analysis points out the test above sets out a "minimal foundation requirement of an implied
or express charge of fabrication" and that "there need be only a suggestion . . . of conscious alteration
or fabrication" to give the "trial court substantial discretion to admit prior consistent statements." 
Id. at 804-05. While pointing out that "the rule cannot be construed to permit the admission of what
would otherwise be hearsay any time a witness's credibility or memory is challenged" lest all prior
consistent statements be adjudged outside the hearsay rule, it admits that there is no "bright line
between a general challenge to memory or credibility and a suggestion of conscious fabrication" and
leaves such determination of that distinction largely to the trial court, which has the ability to observe
the nuances between the two. Id. at 805.

 At the time of her testimony, Janie was seven years old; her outcry alleging Werner's abuse
and interview with the CAC which followed both occurred about a year and a half before trial. From
the record, it is clear that she was not comfortable while testifying; there are several references that
she was sleepy, tired, and "bored" during her testimony. During the course of the CAC interview,
although she continued to tell the interviewer about the relationship and contacts between her and
Werner, she also continued to draw and to ask the interviewer questions which were unrelated to the
investigation. In Werner's questioning of the child, she stated that another person, Richard, had also
gotten her to perform similar acts of fellatio as those which Janie alleged against Werner, charges
she recanted. Then, Janie said she did not know why she had told her mother this and confirmed the
assaults had occurred. Toni testified, however, that she did not believe Janie's allegation against
Richard, saying that she believed those allegations to only have been an effort to gain attention; and
there was some indication that Richard had been tried and acquitted of the charges.

 Toni admitted during cross-examination that Janie had been removed from her home by the
Child Protective Services (CPS) and placed in foster care for almost a year, from September 2006
to August 2007. The trial court limited the extent to which Werner could question the mother on this
topic; in his offer of proof, counsel for Werner said, 

 [T]he questions would go to the relevancy as her motives to support her daughter in
the outcry and to testify in regards to whether or not her daughter has recanted,
whether or not her daughter has made the statements that she made to her, all dealing
with her motive for not wanting to get in any further trouble with CPS or with
CASA. Going to her mental state and motive to testify one way or the other
concerning what threats had been made to her about taking her child away from her
if she did not support her daughter or testify in a certain fashion. 


Toni did concede that the CPS was concerned "about [her] having exposed the children to men that
abuse her." When asked if the CPS had told her anything specific she could do to keep her children,
Toni said she had been told "stay off of drugs." 

 Exactly how Toni's purported motive to lie would affect her relationship with the CPS agency
is not clear from the record. It seems to be the State's position that in May 2006, after Janie's initial
outcry and allegation, the CPS began an investigation of Toni's home situation, an investigation
which resulted in her children being temporarily removed. Based on Werner's questioning of Toni,
and his offer of proof as to other questions, he wanted to ask to explore Toni's "motive for not
wanting to get in any further trouble with CPS or with CASA . . . if she did not support her daughter
or testify in a certain fashion," the trial court could have found that Werner was alleging some
improper influence or motive being brought to bear upon Janie, thereby implying that Janie's
testimony was untrue. That is to say, Werner sought to question the mother regarding whether she
had a motive to support Janie's allegations because Toni feared CPS removing Toni's child or
children again. We review a trial court's decision to admit or exclude evidence for an abuse of
discretion. McDonald v. State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). This standard also
governs our review of the trial court's decision to admit evidence proffered under the hearsay
exception for a prior consistent statement: 

 [w]e note that a reviewing court, in assessing whether the cross-examination of a witness
makes an implied charge of recent fabrication or improper motive, should focus on the
"purpose of the impeaching party, the surrounding circumstances, and the interpretation put
on them by the [trial] court." Courts may also consider clues from the voir dire, opening
statements, and closing arguments. From the totality of the questioning, giving deference to
the trial judge's assessment of tone, tenor, and demeanor, could a reasonable trial judge
conclude that the cross-examiner is mounting a charge of recent fabrication or improper
motive? If so, the trial judge does not abuse his discretion in admitting a prior consistent
statement that was made before any such motive to fabricate arose.


Hammons, 239 S.W.3d at 808-09 (footnotes omitted).

The video statement about which Werner complains was recorded on May 8, 2006, before any action
of the CPS regarding Toni's children. Deferring to the trial court's discretion and its ability to
observe the witnesses' demeanor and credibility, we cannot say the trial court abused its discretion
in allowing the State's rebuttal evidence.

 Even if we found an abuse of discretion on the trial court's part, Werner has not shown
resulting harm. Any nonconstitutional error which does not affect substantial rights must be
disregarded. See Tex. R. App. P. 44.2(b). Substantial rights are not affected by the erroneous
admission or exclusion of evidence if the appellate court, after examining the record as a whole, has
fair assurance that the error did not influence the jury, or had but a slight effect. Motilla v. State, 78
S.W.3d 352, 355 (Tex. Crim. App. 2002). In determining harm, we consider everything in the
record, including any testimony or physical evidence admitted for the jury's consideration, the nature
of the evidence supporting the verdict, and the character of the alleged error and how it might be
considered in connection with other evidence in the case. Id. As mentioned, this trial was to the trial
court, and we will substitute the court, as finder of fact, for the part of the jury in this analysis.

 In addition to the testimony of Janie, the State introduced several letters written by Werner
to Toni during his incarceration awaiting trial. Those letters included pleas for Toni to "go down and
drop those charges on me," and "See if you can talk to [Janie] and see if you can change her words
on what she said about me . . . she saw us making love. That's where she picked that up." Werner's
letters also said, "I'm sorry of what I did," and "all I can say is I'm sorry. Please forgive me. . . .  I
will get help and whatever it takes to keep you in my family . . . I really don't want this on my record
for the rest of my life." 

 In other evidence, Toni also testified that on one occasion, she had discovered Werner hiding
in Janie's bedroom; his explanation to her was that he wanted to wake the child. On another
occasion, Toni's suspicions were aroused when, late at night, she happened upon Werner and Janie
alone together on the couch; at that time, Werner was only wearing shorts and the child's head was
resting on his stomach. Werner told Bonham police officer Terry Bee that Janie was in the habit of
coming up to him and grabbing his penis, over his clothes; he admitted that his penis had gone in the
child's mouth, but he asserted the child initiated contact. 

 Based on the record as a whole, we are confident that even if it had been error to have
admitted the State's rebuttal evidence, that evidence had no determinative effect upon the finder of
fact.

 We overrule Werner's point of error and affirm the trial court 's judgment and sentence. 



 Bailey C. Moseley

 Justice




CONCURRING OPINION


 The proposed theory for admitting the child's prior consistent statement is that an implied
charge was leveled at the child's mother, Mildred Antoinette Curtis (Toni), alleging she had recently
improperly influenced her daughter. The rationale for this theory is that Toni was attempting to
appease the Child Protective Services (CPS) so that her child would not be taken from her custody
for failing to protect her child from men who sexually abused the child. 

 I fail to see how this supports the admission of the child's previous consistent statement. 
Under this theory, Toni influenced her child to implicate Michael Tyne Werner so that she would
be perceived as a good mother by the CPS. But it seems just as likely that, if Toni was attempting
to prove to the CPS that she was a good mother, she would improperly influence her daughter to
absolve Werner, not incriminate him. If no sexual abuse occurred to the child, Toni should not be
criticized by the CPS as being a poor mother. Even if Toni supported her child's statement, I fail to
see how supporting a child's repeated statements that she had been sexually assaulted is an improper
influence on the child. 

 So I do not believe this prior consistent statement met the requirements for admissibility
under the Texas Rules of Evidence. Tex. R. Evid. 801(e)(1)(B). It should have been excluded as
hearsay. Based on the rationale stated in the majority opinion, I agree the error should be classified
as harmless. 



 Jack Carter

 Justice


Date Submitted: September 8, 2008

Date Decided: December 19, 2008


Do Not Publish

1. Rule 801(e)(1)(B) states as follows:


 (e) Statements Which Are Not Hearsay. A statement is not hearsay if:

 

 (1) Prior statement by witness. The declarant testifies at the trial or
hearing and is subject to cross-examination concerning the statement, and the
statement is:


 . . . .


 (B) consistent with the declarant's testimony and is offered to rebut
an express or implied charge against the declarant of recent fabrication or
improper influence or motive; . . . .


Tex. R. Evid. 801(e)(1)(B).
2. The child victim's name is an alias.
3. To the extent Werner asserted as a defense that Janie fabricated her allegation, the CAC
interview would not be admissible under 801(e)(1)(B), as her purported motive to fabricate, that she
was angry because she was not allowed to stay up late, occurred before the CAC interview. 
However, the interview became admissible under 801(e)(1)(B) to answer the theory that Toni had
a motive to fabricate, which did arise after the interview.
4. "Rule 801(e)(1)(B) gives substantive, non-hearsay status to prior consistent statements of
a witness 'offered to rebut an express or implied charge against the declarant of recent fabrication
or improper influence or motive.' We have previously stated that our rule mirrors that of Federal
Rule 801(d)(1)(B) and thus federal decisions provide helpful analysis." Hammons, 239 S.W.3d at
804 (footnotes omitted).