**AFFIRM; and Opinion Filed August 11, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00127-CR
### No. 05-13-00128-CR

**LEWIS MICHAEL WALL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 219-80388-2011, 219-80389-2011**

## MEMORANDUM OPINION

Before Justices Fillmore, Evans, and Lewis
Opinion by Justice Lewis

In a trial based on two indictments, the jury found appellant Lewis Michael Wall guilty of two counts of prohibited sexual conduct, two counts of sexual assault of a child, and one count of indecency with a child. The jury assessed his punishment at twenty years' imprisonment each for the prohibited sexual conduct and sexual assault counts and ten years' imprisonment for the indecency count. Appellant contends the trial court erred by denying his motion for new trial and admitting certain prior consistent statements and character evidence. Appellant also challenges the sufficiency of the evidence regarding instances of sexual assault and prohibited conduct that involved oral sex. We issue this memorandum opinion because the law to be applied in the case is well settled. TEX. R. APP. P. 47.4. We affirm the trial court's judgments.

## Background

Appellant married the complainant's mother when the complainant was a baby; he adopted the complainant when she was a teenager. She alleges appellant sexually abused her from the time she was four years old until the summer after she graduated from high school. During that time period, the complainant reported and then recanted reports of abuse three times.

When she was seven or eight years old, and living in Georgia with her mother and appellant, the complainant told her mother appellant was touching her vagina. Her mother called the police, and appellant moved out. But her mother was emotionally distraught, and the complainant testified she recanted for her mother's sake. Appellant then returned to the family home.

After about six months, the complainant testified, the abuse started up again. Appellant's conduct escalated to oral sex and, by the time the complainant was sixteen years old, appellant was having sexual intercourse with her. The complainant again told her mother; her mother called the police, and appellant left the house. But after a few months the complainant recanted again, after seeking help from appellant when she had been involved in an automobile accident.

Shortly after appellant moved back in with the complainant and her mother the second time, he was laid off from his job. Appellant and the complainant moved to Texas and stayed for several weeks at an apartment at the Shops at Legacy in Plano. The complainant testified appellant continued to have sexual intercourse and oral sex with her at that apartment. After those weeks at the Legacy apartment, the complainant's mother joined them in Texas, and the family moved to a new apartment.

Soon after the move, when the complainant had started attending school in Plano, her mother caused a report to be made to Child Protective Services.[1] The complainant underwent a forensic interview, but she denied any abuse. At trial, she testified she had hoped for a fresh start in Texas and wanted to avoid any further embarrassment.

Finally, after her high school graduation, the complainant confided the abuse to her boyfriend during an argument. At his insistence, she told the boyfriend's parents, and then the police. The complainant moved in with her boyfriend's family for the remainder of the summer. She went on to attend college, and she had no further contact with appellant.

Appellant was found guilty of two counts of prohibited sexual conduct, two counts of sexual assault of a child, and one count of indecency with a child. The jury assessed his punishment at twenty years' imprisonment each for the prohibited sexual conduct and sexual assault counts and ten years' imprisonment for the indecency count. This appeal followed.

### *Rule 705 Hearing*

In his first issue, appellant complains the trial court erred in denying his motion for new trial. Appellant contends he was denied a meaningful hearing to ascertain the expert opinions— and the support for those opinions—to be proffered by the State's expert from the Children's Advocacy Center, Janette Michaels. Appellant complains specifically that the State elicited only general opinions from Michaels at the hearing, but at trial Michaels testified to undisclosed and unsupported opinions concerning recantation statistics. At the hearing on appellant's motion for new trial, appellant's expert testified that Michaels's statistical testimony was incorrect.

We review the denial of a motion for new trial for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). The defense is entitled to question a State expert concerning the bases of her opinions:

---

[1] The mother testified she told her doctor about the abuse, and he made a report to the police.

> Prior to the expert giving the expert's opinion or disclosing the underlying facts or data, a party against whom the opinion is offered upon request in a criminal case shall, or in a civil case may, be permitted to conduct a voir dire examination directed to the underlying facts or data upon which the opinion is based. This examination shall be conducted out of the hearing of the jury.

TEX. R. EVID. 705(b). Our review of the record of the 705 hearing indicates that many of the areas of questioning were indeed discussed very generally. Moreover, whenever appellant's counsel asked Michaels for authority for a proposition, the expert simply stated she had not brought authorities with her.

The State contends appellant did not preserve his objection to Michaels's testimony, but appellant's counsel did object to the generality of the State's proffer of opinions and to the witness's inability to cite to any authority for her opinions. That said, appellant's complaints on appeal are limited to Michaels's opinions on recantation. When that subject was addressed at the hearing, appellant's counsel stated:

> Now I don't have a problem in general with generalized questions saying do children recant. Are all recantations truthful.

> I do acknowledge in the literature that people say children recant. You know, I mean, I'm sure there are instances in which victims stick with their perpetrators. How that would be applicable in this case can't be asked in a generalized fashion. It would have to be rooted to some facts in the case.

And although the witness's lack of authority was addressed, counsel conceded there was an adequate basis for the expert's opinions on this issue, stating: "Recantations, I'll take her word that there's a basis for that." So in terms of recantation opinions that were expressed at the hearing, we agree that appellant has not preserved error.

But appellant's fundamental complaint in this Court is that Michaels was permitted to express recantation opinions that were not disclosed at the hearing. On direct examination, Michaels testified generally that recanting is "a lot of times part of the disclosure process." On cross, however, appellant's counsel began challenging Michaels to give specifics concerning

–4–

percentages of children who recant, and how many are valid. After eliciting agreement that some recantations are valid and some are not, appellant's counsel pressed on:

> COUNSEL: Well, you know, you can't sit here and say and cite a statistic about that. I mean, do you have any reason to believe like what percentage of recantations are invalid?

> WITNESS: I'm not even sure what you're asking me.

> Q: You know, most of them? More than half? Less than half?

> A: Of recantations how many are valid?

> Q: Yeah.

> A: My recollection of the research is that a majority of them are not valid.

> Q: Okay. Do you have any sources for that?

> A: Again, I did not bring literature today.

Thus, appellant's counsel elicited the opinion that was not disclosed during the hearing. He argues the questions were necessary once the witness testified on direct that recantation happens "a lot." But appellant did not object then to the undisclosed opinion. Instead he pressed the witness for statistical corroboration on cross examination and ended up with the witness's "recollection" that was unfavorable to appellant. He succeeded in discrediting the "recollection" when the expert could not cite authority for the opinion. But appellant cannot complain, in essence, that the witness answered his question. When a question invites an inadmissible response, any error is invited. *See Jenkins v. State*, 948 S.W.2d 769, 776 (Tex. App.—San Antonio 1997, pet. ref'd); *see also Gray v. State,* No. 05-04-01269-CR, 2005 WL 1670715, at *9 (Tex. App.—Dallas July 19, 2005, no pet.) (not designated for publication) ("Defense counsel elicited the first response by asking an open-ended question and cannot complain of error he invited.").

We conclude the trial court did not abuse its discretion in denying appellant's motion for new trial. We overrule his first issue.

*"Opening the Door"*

In his second and third issues, appellant contends the trial court erred by admitting (a) prior consistent statements of the complainant, and (b) testimony vouching for the complainant's character for truthfulness, when it was the State—and not appellant—who first addressed the complainant's credibility. We review a trial court's decision to admit evidence for an abuse of discretion. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

Under the heading of prior consistent statements, appellant complains that the trial court admitted video interviews of the outcries the complainant made as a child in Georgia. Our rules of evidence declare that a statement is not hearsay if:

> The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

TEX. R. EVID. 801(e)(1)(B). Appellant argues the interviews were inadmissible because the evidence they were "offered to rebut" was offered by the State itself on direct.

Appellant also complains of the court allowing the State to call two witnesses to testify to the complainant's character for truthfulness. Rules concerning admissibility of character evidence for truthfulness are similar to those for prior consistent statements. We begin with the assumption that every witness has a truthful character. *Michael v. State*, 235 S.W.3d 723, 725 (Tex. Crim. App. 2007). If that character is attacked, then evidence may be offered of the witness's good character for truthfulness. *Id.*; *see also* TEX. R. EVID. 608(a)(2) ("evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise").

In both instances, appellant argues the evidence should not have been allowed in rebuttal because it was the State, not the appellant, who first "opened the door" to evidence of the complainant's truthfulness. Our review of the record indicates the State did question the

–6–

complainant concerning her earlier outcries and recantations during the State's direct examination. However, if the State anticipates an attack on the witness's credibility, it may address such issues and still introduce the witness's prior consistent statement on rebuttal, so long as the witness was actually "impeached on cross-examination with an express or implied accusation of recent fabrication." *Hammons v. State*, 239 S.W.3d 798, 806 (Tex. Crim. App. 2007).

Appellant argues the State could not have anticipated such an attack because he made no opening statement, and the complainant was the first witness called at trial. The State points to appellant's voir dire questioning, in which appellant's counsel asked the panel a series of questions concerning the propensity of teenagers to fabricate stories. He asked, "Do you ever think that it's possible a teenager would lie or create a false scenario in order to get something that they want?" He asked variations on the question, but all were rooted in fabrication: "Do you think it's possible that a teenager would construct a scenario?" or "construct a story" or "construct scenarios that aren't true?" He asked a potential juror, "What's your reaction if I say teenagers sometimes manufacture these stories?" He asked a parent of a teen, "Do you have situations in which she's concocted falsehoods?" And he asked a parent of grown children, "Did you have any problems with them manufacturing stories when they were teenager[s]?" This line of questioning fills approximately thirteen pages of the defense's voir dire examination.[2]

Appellant's counsel argued at submission that challenges to credibility are both ubiquitous and necessary in voir dire. He contends that treating every voir dire credibility challenge as a suggestion of fabrication would allow admission of credibility-bolstering

---

[2] In his reply brief, appellant argues that the State's voir dire addressed recantations, so appellant was merely responding to that "open door." But appellant addressed recantations, responding to the State's questions on the subject, in a portion of his voir dire separate and apart from the portion dedicated to teenagers and fabrication.

statements in every trial. The *Hammons* court addressed the distinction between a mere challenge to credibility and a charge of fabrication:

> There is no bright line between a general challenge to memory or credibility and a suggestion of conscious fabrication, but the trial court should determine whether the cross-examiner's questions or the tenor of that questioning would reasonably imply an intent by the witness to fabricate.

*Hammons*, 239 S.W.3d at 805. We apply this same test to appellant's voir dire questioning. We conclude appellant's voir dire questions establish with certainty that appellant intended to paint the complainant as a fabricator. And that intent is confirmed by the tenor of appellant's cross-examination of the complainant and his closing argument, where his counsel opined:

> I think, however, this is a story. She got on a train that she couldn't stop. She told that story and she has to stick by it.

*See id.* at 806, n.20 ("Thus, the assertion, during closing argument, that the witness's testimony was affected by an improper motive, may confirm the correctness of the trial court's decision to admit a prior consistent statement.").

We conclude the State correctly anticipated that appellant's intent in this case was to argue the complainant had fabricated her charges of abuse. Accordingly, the trial court did not abuse its discretion in allowing the State to offer the complainant's prior consistent statements in rebuttal. We overrule appellant's second issue.

The test is similar for admission of the testimony of the two witnesses concerning complainant's character for truthfulness. When deciding whether to admit the testimony of such witnesses,

> the question for the trial judge is whether a reasonable juror would believe that a witness's character for truthfulness has been attacked by cross-examination, evidence from other witnesses, or statements of counsel (*e.g.,* during voir dire or opening statements).

*Michael*, 235 S.W.3d at 728. We conclude appellant's voir dire and cross-examination would cause a reasonable juror to believe the complainant's character for truthfulness had been

attacked.  *See id.*  The trial court did not abuse its discretion in admitting the testimony of the character witnesses.  We overrule appellant's third issue as well.

*Sufficiency of Evidence*

In his fourth issue, Wall contends the evidence is insufficient to establish he had oral sex with the complainant at the time and place charged by the State.  In reviewing a challenge to the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Appellant's argument is based on two brief exchanges at trial.  The first took place during the complainant's direct examination by the State:

Q:  So what else would he do there in Plano when y'all first moved besides he would have sexual intercourse with you?  What other parts of his body would touch you?

A:  He would still make me give him oral sex like if I was on my period or something.

Q:  Make you put your mouth on his penis?

A:  Yes, ma'am.

And then the second took place on the complainant's cross examination by appellant's counsel:

Q:  As I understand it you get to Texas in what, about July of 2008?

A:  June or July, yes, sir.

Q:  And you move into the Legacy Shops, right?

A:  Yes, sir.

Q:  And you lived there for about what, two weeks before you go get Pam and come back?

A:  Yes, sir.

Q:  And I guess part of that time you said you were on your period?

A:  No.

Appellant argues these exchanges prove he did not have oral sex with the complainant during the time the family lived in the Legacy apartment, because the complainant testified she was not on her period during those weeks.

We do not read the two exchanges to yield such certainty. When appellant's counsel asked the complainant what other parts of appellant's body touched her during this specific time period, she responded that appellant would still make her give appellant oral sex. She qualified her answer only to explain when appellant demanded oral sex: "like if [the complainant] was on [her] period *or something*." (Emphasis added). But counsel did not follow up to determine when "something" else would have occasioned appellant's demand. Likewise, counsel did not clarify the ambiguity created by his question: "And I guess part of that time you said you were on your period?" Appellant assumes the complainant's negative response meant she was not on her period during the time she lived in the Legacy apartment. But her response could also have meant that she had not *said* she was not on her period during that time—and, indeed, she had not said that.

We conclude the complainant's testimony relied upon by appellant did not exclude the possibility that appellant engaged her in oral sex while they lived at the Legacy apartment. The complainant's testimony is sufficient, standing alone, to support the conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1) (West Supp. 2013). The jury's duty is to determine the credibility of the witnesses and the weight to be given their testimony. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Looking at the complainant's testimony in the light most favorable to the trial court's judgment, we conclude a rational juror could have concluded appellant was guilty beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319.

We overrule appellant's fourth issue.

## Conclusion

We have decided each of appellant's issues against him.  We affirm the trial court's judgments.

/David Lewis/
_____
DAVID LEWIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130127F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

LEWIS MICHAEL WALL, Appellant

No. 05-13-00127-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-80388-2011.
Opinion delivered by Justice Lewis,
Justices Fillmore and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of August, 2014.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

LEWIS MICHAEL WALL, Appellant

No. 05-13-00128-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-80389-2011.
Opinion delivered by Justice Lewis,
Justices Fillmore and Evans participating.


Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 11th day of August, 2014.