NO. 07-08-0217-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

DECEMBER 10, 2009
_____

ALLEN ALEXANDER NEWSOME, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 54,512-B; HONORABLE JOHN BOARD, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Allen Alexander Newsome, was convicted of aggravated sexual assault of a child[1] and sentenced to incarceration in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for 75 years. Appellant contends that the evidence is legally and factually insufficient to support the judgment and that the trial court committed reversible error in allowing the prior consistent statements of the complaining witness to be heard by the jury. Disagreeing with appellant, we will affirm.

_____

[1]See TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (Vernon Supp. 2007).

Factual and Procedural Background

On December 22, 2005, DS, the victim, was visiting with her aunt, Amanda Spiller. While at her aunt's home, DS confided that she had been sexually assaulted by appellant. DS initially told Spiller that the assault occurred a couple of days earlier. After DS told her aunt, Spiller called DS's mother. As a result, the mother contacted the police. Officer Roberts of the Amarillo Police Department originally took the call and, after visiting with the mother and aunt, requested permission to obtain an examination by a Sexual Assault Nurse Examiner (SANE). Subsequently, DS was taken to Northwest Texas Hospital and examined to determine if she had been sexually assaulted. The exam was performed by SANE nurse, Melissa Fanelli. Fanelli's exam found that appellant relayed a history of sexual abuse by appellant, who DS referred to as Uncle Stanka. When discussing what had ocurred, DS stated that appellant tried to "rape me." Fanelli further stated that DS reported, "He put his middle spot, in which she pointed to her genitals, inside me." This corresponded with what DS testified to during the trial. According to Fanelli, DS, who was seven at the time of the interview, was extremely graphic and knowledgeable. The physical exam of DS revealed chronic vaginal penetration which, according to Fanelli, was more like what you would expect to find in a sexually active adult. Detective Gregory Fisher testified that he investigated the case following the initial report by Officer Roberts. As part of his investigation, Fisher made contact with DS's mother. During this initial interview, Fisher obtained appellant's name. Appellant, who lived in the home, came to the residence while Fisher was still conducting his initial interview. At the request of Fisher, appellant accompanied Fisher to the police headquarters. While at the police station,

2

appellant was advised of the nature of the complaint and read his rights.[2] Appellant then gave a written statement to Fisher. The statement was introduced at the trial and, while it did not specifically deny appellant's involvement with DS, it did allege that DS's grandmother, Mary Johnson, was the cause of the allegations being lodged against him. Fisher admitted that he never requested appellant to submit to DNA testing. Further, Fisher admitted that none of the bedding or any of the clothing that DS might have been wearing was tested for the presence of semen or DNA.

The State introduced the testimony of Amanda Spiller, who, although she was the first adult that DS made an outcry to, was not listed as an outcry witness. During Spiller's direct examination, she was asked what DS had told her. Appellant objected that this was hearsay testimony. Originally, the trial court sustained the objection, however, when the State later returned to the same subject, the trial court allowed the testimony pursuant to Texas Rule of Evidence 801(e)(1)(B). See TEX. R. EVID. 801(e)(1)(B).[3] According to the State's theory of admissibility, appellant had opened the door to this evidence by alleging that DS's testimony was fabricated or was the result of improper influence or motive.

Appellant testified in his own behalf and denied any sexual impropriety with DS. Further, appellant alleged that DS's grandmother had attempted to file some type of sexual assault charge against him on two other occasions. No charges were ever pursued in the

---

[2]See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[3]Further reference to Texas Rules of Evidence will be by reference to "rule ___" or "Rule ___."

other cases. After hearing the evidence and arguments of counsel, the jury found appellant guilty and subsequently sentenced him to 75 years in the ID-TDCJ.

Appellant has brought forth four issues that concern the sufficiency of the evidence, both legal and factual, and the correctness of the trial court's ruling admitting the testimony of Amanda Spiller.

Sufficiency of the Evidence

Standard of Review

Because appellant's brief complains of both the legal and factual sufficiency of the evidence, we will address both standards of review. We are required to conduct an analysis of the legal sufficiency of the evidence first and then, only if we find the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We measure the legal sufficiency of

4

the evidence against a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See id. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The Court of Criminal Appeals has recently declared that, when reviewing the evidence for factual sufficiency, the reviewing court should measure the evidence in a neutral manner against a "hypothetically correct jury charge." Vega v. State, 267 S.W.3d 912, 915 (Tex.Crim.App. 2008) (citing Wooley v. State, 273 S.W.3d 260, 268 (Tex.Crim.App. 2008)).

Legal Sufficiency

To prove that appellant was guilty of aggravated sexual assault of DS, the State was required to prove that: 1) appellant, 2) on or about the 20th day of December, 2005, 3)

intentionally or knowingly, 4) caused the penetration of the female sexual organ, 5) of DS, 6) a child, then younger than 14 years. To meet this burden of proof, the State offered the testimony of DS, who testified about the assault, when the assault took place, and her age at the time. DS both described the assault and then identified the body parts that she was referring to. The State also produced the testimony of the SANE nurse, Fanelli, who, in addition to reciting what DS told her as she took the history, provided detailed testimony regarding the examination of DS's genital area. During this examination, Fanelli found chronic trauma to DS's vaginal area. In fact, Fanelli opined that this was indicative of chronic vaginal penetration, more like you would expect to find in the case of a sexually active adult. Amanda Spiller testified as to what DS had told her initially. This testimony was consistent with the facts that DS testified to before the jury. Thus, when we view this evidence in the light most favorable to the jury's verdict, as required in a legal sufficiency review, we cannot say that the jury was acting irrationally when it found appellant guilty beyond a reasonable doubt. See Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Therefore, we overrule appellant's issue regarding the legal sufficiency of the evidence.

Factual Sufficiency

When we conduct a factual sufficiency review, we are again to analyze the evidence against a "hypothetically correct" charge. Vega, 267 S.W.3d at 915. However, this time we view the evidence in a neutral manner, without the prism of "in the light most favorable to the verdict," to determine if the jury acted rationally in finding appellant guilty beyond a reasonable doubt. Watson, 204 S.W.3d at 415.

What the record reflects is that DS had been sexually assaulted by someone on more than one occasion. There is nothing in the record to dispute the findings of the SANE examination. Next, the record reflects that DS has consistently named appellant as the perpetrator of the offense, both in her testimony before the jury, report to the SANE nurse, and outcry to her aunt. Appellant contends that the lack of DNA evidence and his testimony regarding previous reports of unfounded allegations of sexual impropriety alleged against him by DS's grandmother casts doubt on the jury's verdict. Sims, 99 S.W.3d at 603. However, to accept appellant's position, we have to completely supplant the jury's resolution of the issue of evaluation of credibility based upon observations of the witnesses' demeanor. Rather than supplant the jury on that issue, we are instructed to defer to that jury's determination of credibility. See Laster v. State, 275 S.W.3d 512, 518 (Tex.Crim.App. 2009). Because we view appellant's contention regarding the factual sufficiency of the evidence to go only to an issue of credibility, we cannot say that the jury acted irrationally when it found appellant guilty beyond a reasonable doubt. Therefore, we overrule appellant's issue regarding the factual sufficiency of the evidence.

## Prior Consistent Statement

Appellant next contends, through two issues, that the trial court committed error by overruling his objection to the testimony of Amanda Spiller regarding prior consistent statements made by DS and that the trial court committed reversible error in allowing the same testimony to be admitted. The essence of appellant's complaint deals with the admission of evidence during trial and is, thus, governed by an abuse of discretion standard. See Weatherred v. State, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000); Green v.

7

State, 934 S.W.2d 92, 101-02 (Tex.Crim.App. 1996). A reviewing court applying the abuse of discretion standard should not reverse a trial judge's decision that is within the zone of reasonable disagreement. Green, 934 S.W.2d at 102. If the trial judge's decision is correct on any theory of law applicable to the case, the decision will be sustained. See State v. Ross, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000).

The testimony at issue was that of Amanda Spiller. Spiller was asked and allowed to answer about what DS had relayed to her on the night when DS first made an outcry. Appellant objected that the testimony was hearsay. The State countered that the testimony was admissible pursuant to rule 801(e)(1)(B). See Rule 801(e)(1)(B).[4] To be admissible as non-hearsay, substantive evidence pursuant to rule 801(e)(1)(B), the statement must meet four requirements:

> (1) the declarant must testify at trial and be subject to cross-examination;
>
> (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony by the opponent;
>
> (3) the proponent must offer a prior statement that is consistent with the declarant's challenged in-court testimony; and,
>
> (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.

---

[4]Rule 801(e)(1)(B) provides,

(e) **Statements Which Are Not Hearsay.** A statement is not hearsay if:

(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

> (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive;

8

Hammons v. State, 239 S.W.3d 798, 805 (Tex.Crim.App. 2007). Appellant has not challenged any of the requirements quoted above, except that of the implied charge of recent fabrication or improper influence or motive of the declarant's testimony by the opponent. Appellant contends that a review of the record reveals that trial counsel never alleged or implied that DS had fabricated the story or was influenced to fabricate a story.

The record reflects that, during voir dire, trial counsel asked the jury panel, "Again, a show of hands, how many people here believe that children lie?" Trial counsel then continued that line with the following, "And we discussed – you discussed that earlier with the prosecutors, a number of reasons why they lie. To get out of trouble, win someone's favor, suggestibility, someone put them up to it." Again, later in voir dire, trial counsel made the following statement, "And then the only other thing I want to say is, you know, we're talking about false accusations and kids make false accusations and how prevalent it is." Later, trial counsel stated during voir dire, "So is everyone here familiar with and aware that false accusations are made – let me ask you, you're aware that false accusations are made pretty much all the time." During the State's case-in-chief, while discussing the cross-examination of DS, trial counsel made the following statement to the court:

> Your Honor, we'd ask for an in-camera hearing to develop what line of questioning we'd like to take with respect to – well, two reasons. One is to refute the – or to rebut the scientific evidence and the medical evidence, and I guess if we need to re-call her after the nurse we can do it then. And also for credibility and motive that– well, a couple– that and to show she's made other accusations against other people . . . .

Later, before beginning cross-examination of DS, an issue regarding the line of questioning appellant was proposing to put to DS was raised by the State. While explaining the reasons he should be allowed to ask DS about other allegations she might have made, trial counsel stated, "Our line of questioning is, you know, if she's going to accuse everybody– you know, every male relative, cousins and uncles and another uncle, and I think we're allowed to bring that up and let the jury sort through that . . . ."

Subsequently, Amanda Spiller was called as a witness. Spiller was asked about what DS had told her and appellant objected. The trial court ruled that the testimony was admissible as a prior consistent statement because "I think there has been an inference made by the Defense that the victim was – fabricated the story and I'll allow it under that exception." Trial counsel picked up the thread of fabrication, during the cross-examination of Detective Fisher, when he asked if appellant had told Fisher about previous allegations of some sort of sexual impropriety being made against appellant by DS's grandmother, Mary Johnson. After the State objected to the line of questioning on the basis of relevance, appellant's trial counsel stated,

> And, two, to show that there may be a motive for bias of why this girl's, you know, making these accusations. Not whether it's true or not, but if he's been accused before falsely and it's the grandmother who did it, I think that's relevant to show that, you know, it's still the grandmother that's behind this.

Finally, appellant testified that he had been accused previously by the grandmother of DS, Mary Johnson, and, by implication, Johnson had put DS up to accusing appellant on this occasion. That appellant had previously been accused by Johnson was a subject that trial counsel argued forcefully in final arguments.

10

A reviewing court judges the propriety of admitting evidence under an abuse of discretion standard. <u>Weatherred</u>, 15 S.W.3d at 542. Further, in trying to determine whether the prior consistent statement was admissible, we must determine whether appellant opened the door to this evidence by the content, tone, and tenor of defense's cross-examination. <u>Hammons</u>, 239 S.W.3d at 808. <u>Hammons</u> goes on to state that the cross-examination, "either does or does not 'open the door' to the admissibility of a prior consistent statement by an express or implied suggestion that the witness is fabricating her testimony in some relevant respect." <u>Id</u>. Finally, when making this type of determination regarding the admissibility of a prior consistent statement, we are instructed that, "Courts may also consider clues from the voir dire, opening statements, and closing arguments." <u>Id</u>.

When the entire record is reviewed, especially voir dire and the cross-examination of DS and Detective Fisher, the defensive theory of fabrication or motivation for lying is apparent. Thus, we cannot say that the trial court abused its discretion in admitting the prior consistent statement before the jury. <u>Weatherred</u>, 15 S.W.3d at 542. Appellant's issues regarding the admission of the prior consistent statement are overruled.

## Conclusion

Having overruled appellant's issues, the judgment of the trial court is affirmed.

Mackey K. Hancock
Justice

Do not publish.

11