

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00394-CV

| | | |
|---|---|---|
| In the Matter of C.N. | § | From County Court at Law No. 1 |
| | § | of Denton County (JV-2010-00636) |
| | § | March 7, 2013 |
| | § | Opinion by Chief Justice Livingston |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's order. It is ordered that the order of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS


By_____
Chief Justice Terrie Livingston



## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00394-CV

IN THE MATTER OF C.N.

----------

FROM COUNTY COURT AT LAW NO. 1 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In three points, appellant C.N. contends that his trial counsel was ineffective, that the trial court abused its discretion by admitting a video of a Child Advocacy Center interview with the complainant and her sister, and that the evidence is legally and factually insufficient to support the trial court's finding of "true" as to whether he engaged in delinquent conduct. We affirm.

### Sufficiency of the Evidence

---

[1]See Tex. R. App. P. 47.4.

In his third point, C.N. challenges the legal and factual sufficiency of the evidence to support the "true" finding as to whether he committed delinquent conduct by committing the offense of aggravated sexual assault of a child by digital penetration. Although a juvenile proceeding is civil, we apply the criminal sufficiency standard. *In re A.O.*, 342 S.W.3d 236, 239 (Tex. App.—Amarillo 2011, pet. denied); *In re J.D.P.*, 85 S.W.3d 420, 422 (Tex. App.—Fort Worth 2002, no pet.). The Court of Criminal Appeals has concluded that the sole standard to be used to determine sufficiency in criminal cases is *Jackson v. Virginia*. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Thus, we will review the evidence here using only the *Jackson* standard of review. *See In re R.R.*, 373 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, pet. filed).

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

The complainant, Theresa,[2] testified that she and her sister rode home after school on the bus and that appellant sometimes stayed at her home with

---

[2]We will refer to the complainant and her sister using pseudonyms. *See* Tex. R. App. P. 9.8 cmt.

2

them and their little brother until their mother came home. According to Theresa, when she was in third grade, appellant touched her on her private, which is where she goes "pee from," and he touched her underneath her underwear and inside her private. She tried to get away from appellant, but he locked the door to the room they were in; Theresa cried for her sister Donna to open the door with a hanger. Once her sister got her out of the room, Theresa told her what had happened. Theresa's sister corroborated her testimony about Theresa's being in the room with appellant and having to let her out, but she did not remember the door being locked. Theresa was twelve and Donna ten at the time of trial.

Appellant contends the evidence is insufficient to prove aggravated sexual assault, particularly that he digitally penetrated Theresa. However, Theresa's testimony alone is sufficient to prove the offense. *See, e.g.*, *Johnston v. State*, 230 S.W.3d 450, 455 (Tex. App.—Fort Worth 2007, no pet.). Her testimony about where appellant touched her, although couched in the language of a young child, showed sufficient awareness to equate "inside" with penetration. *See, e.g.*, *Villalon v. State*, 791 S.W.2d 130, 133–34 (Tex. Crim. App. 1990); *Cantu v. State*, 366 S.W.3d 771, 776 (Tex. App.—Amarillo 2012, no pet.) ("The courts will give wide latitude to testimony given by child victims of sexual abuse."); *cf. Mallet v. State*, 9 S.W.3d 856, 863–64 (Tex. App.—Fort Worth 2000, no pet.) (concluding that the victim's testimony that the defendant's penis went inside her "butt" or "backside" was sufficient to prove that it penetrated her anus).

3

Accordingly, we conclude and hold that the evidence is sufficient to support the trial court's finding of true. *See* Tex. Penal Code Ann. § 22.021 (West Supp. 2012). We overrule appellant's third point.

**Effectiveness of Counsel**

In his first point, appellant contends that his counsel provided ineffective assistance by agreeing to proceed on two charges in the same trial: the aggravated sexual assault charge involving Theresa and another aggravated sexual assault charge involving her sister Donna. Appellant also contends that counsel should have objected to extraneous offense evidence that appellant had touched Donna a second, separate time and to the State's question asking the investigating detective whether he thought the girls were credible.

**Standard of Review**

To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009). In other words, for a claim of ineffective assistance of counsel to succeed, the record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). An ineffective-assistance claim must be "firmly founded in the

4

record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Id.* (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813. This statement is true with regard to the deficient-performance prong of the inquiry when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Thompson*, 9 S.W.3d at 813. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Salinas*, 163 S.W.3d at

5

740 (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

The prejudice prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

**Separate trial**

Appellant was charged with two sexual assault of a child offenses: the State alleged that he penetrated both Theresa and Donna. The cases were set

6

for the same day. When the trial court asked whether the cases would be tried together or separately, counsel for appellant and the State agreed that they were trying the cases together. During voir dire one of the venire panel asked whether it was fair to try both cases together; the prosecutor responded, without objection, that counsel for both parties had decided it was fair. Although the jury convicted appellant of the offense against Theresa, it deadlocked on the offense against Donna, and the trial court declared a mistrial.

Appellant contends that trial counsel's agreement to consolidate the trials was ineffective and prejudicial. According to appellant, the State was able to emphasize in its closing argument that the two girls together were more credible than one:

> I guess there's some idea that these girls would have gotten together and created some kind of lie. And when they got together and made this lie, these young girls, one of them whose favorite show is [Phineas] and Ferb and the other one who loves the Disney Channel too, got together with [the investigating detective] back here.

Donna was a witness to the circumstances relevant to the offense alleged against Theresa, i.e., she testified about the day Theresa was in the bedroom alone with appellant. Both alleged assaults took place under similar circumstances, after school when the children were alone in the house. Both girls were interviewed at the Children's Advocacy Center on the same day and were examined by a sexual assault nurse examiner on the same day.

7

The record is silent as to counsel's reasons for agreeing to the consolidation. In addition to taking into account the similar facts and witnesses and the expediency of holding one trial, counsel could have decided that a challenge to the credibility of the investigators and competency of their investigation—the primary defensive theory—and the credibility of the girls' accounts of the alleged incidents, would carry more weight if the two cases were tried together. Considering that the girls' mother testified that she did not believe the offenses occurred as alleged,[3] that there was confusion as to the dates the offenses occurred, and that the two cases were investigated together by CPS and law enforcement, this is a reasonable defensive strategy. *See, e.g.*, *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (holding that when record is silent as to counsel's reasons for the challenged conduct, we must "assume a strategic motivation if any can possibly be imagined"), *cert. denied*, 537 U.S. 1195 (2003); *Bryant v. State*, 282 S.W.3d 156, 171 (Tex. App.—Texarkana 2009, pet. ref'd).

Accordingly, we conclude and hold that appellant has not shown that his counsel was ineffective for agreeing to try the cases together.

Appellant also contends that counsel was ineffective for failing to object when the State asked Detective Hinojosa, the Little Elm detective who

---

[3]Although she testified that she believed something sexual happened, which caused her to prohibit appellant from staying alone with the girls, she said she did not believe the details as alleged.

8

investigated the allegations, whether he believed the offenses occurred. The record is also silent as to counsel's reasons for failing to object, but her strategy is clear from the record. During her cross-examination of the detective, she asked him if he ever made mistakes, and he answered, "All the time." The prosecutor's credibility question was in the context of the detective's explanation of why it took so long to bring charges against appellant and why his investigation took so long. Counsel's strategy of conceding the detective's belief that he had charged the correct person was reasonable in light of her defensive theory that the detective was mistaken in his conclusion. *See Bryant*, 282 S.W.3d at 171. Thus, we conclude and hold that appellant has not shown that counsel was ineffective for failing to object to this question and the detective's answer.

We overrule appellant's first point.

## Video of Outcry

In his second point, appellant contends that the trial court abused its discretion by admitting Exhibit 14, which included video of Theresa's and Donna's interviews at the Child Advocacy Center. Appellant argues that Theresa's interview should not have been admitted because family code section 54.031 does not allow the playing of a video of an outcry in addition to the outcry witness's testimony. Tex. Fam. Code Ann. § 54.031 (West Supp. 2012). He also argues that neither of the interviews was admissible as a prior consistent statement. *See* Tex. R. Evid. 801(e)(1)(B).

9

**Applicable Facts**

The State first attempted to admit the video interview of Theresa as outcry evidence in conjunction with the testimony of the forensic interviewer. The trial court was initially reluctant to admit the video in addition to the forensic interviewer's testimony. The trial court decided to take the matter under advisement until it could review the video outside the jury's presence. The trial court ruled that the video of the interview of Theresa was admissible "in lieu of [the interviewer's] testimony about those things that are subject to the outcry statute." The court admonished the State not to play any part of the video that was not related to "what happened." The State later offered the video of Donna's interview under the rule of optional completeness, which the trial court denied.

On the second day of trial, the State reoffered Exhibit 14, consisting of the interviews of both girls. According to the State, because the girls' mother testified on cross-examination that she believed something had happened to Theresa, but not what the State had alleged, the State moved to admit the entirety of both interviews as prior consistent statements to rebut an allegation of recent fabrication. The trial court ultimately admitted the entirety of the interviews of both girls as prior consistent statements, and the video was played for the jury after a nurse testified about her physical examinations of the girls.

**Family Code Section 54.031**

Regarding the interview of Theresa, we find nothing in family code section 54.031 that limits the use of a videorecording of an interview. Section 54.031,

10

subsections (b) and (c) provide—in a juvenile prosecution for a sexual offense involving a child victim under twelve—that

> (b) This section applies only to statements that describe the alleged violation that:
>
> (1) were made by the child or person with a disability who is the alleged victim of the violation;  and
>
> (2) were made to the first person, 18 years of age or older, to whom the child or person with a disability made a statement about the violation.
>
> (c) A statement that meets the requirements of Subsection (b) is not inadmissible because of the hearsay rule if:
>
> (1) on or before the 14th day before the date the hearing begins, the party intending to offer the statement:
>
> (A) notifies each other party of its intention to do so;
>
> (B) provides each other party with the name of the witness through whom it intends to offer the statement;  and
>
> (C) provides each other party with a written summary of the statement.

Tex. Fam. Code Ann. § 54.031(b), (c).  Thus, by its plain language, the statute provides that such a statement is not hearsay; it does not address the format in which the statement must be offered, only that it must be offered through a specific, identified witness.  *Id.*  Here, the State offered the part of Theresa's video interview in which she described what appellant did to her in lieu of having

11

the interviewer testify about the statement.[4]  We find nothing in the plain language of section 54.031 prohibiting such a procedure.

**Prior Consistent Statements**

We must review whether the remainder of Theresa's interview and all of Donna's interview are admissible as prior consistent statements.

The content, tone, and tenor of defense cross-examination may "'open the door' to the admissibility of a prior consistent statement by an express or implied suggestion that the witness is fabricating her testimony in some relevant respect." *See Hammons v. State*, 239 S.W.3d 798, 808 (Tex. Crim. App. 2007). Because "much of the force of cross-examination depends upon the tone and tenor of the questioning, combined with the cross-examiner's demeanor, facial expressions, pregnant pauses, and other nonverbal cues," a reviewing court should focus on "the 'purpose of the impeaching party, the surrounding circumstances, and the interpretation put on them by the [trial] court.'" *Id.*  We may also consider clues from the voir dire, opening statements, and closing arguments.  *Id.*  We must decide, "[f]rom the totality of the questioning, giving deference to the trial judge's assessment of tone, tenor, and demeanor, could a reasonable trial judge conclude that the cross-examiner is mounting a charge of recent fabrication or improper motive?"  *Id.* at 808–09.  For a prior consistent

---

[4]Appellant has not challenged the trial court's determination that the statement is admissible as an outcry because Theresa's initial statement to her mother did not go into detail.

12

statement to be admissible, "the prior consistent statement must be made prior to the time that the supposed motive to falsify arose." *Id.* at 804.

The prosecutor began her opening statement by saying that "[t]his is a story about little girls that share secrets and things that are secretive happening behind locked doors. Today you're going to hear from . . . a number of different people. You're going to hear that [Donna] told her secret . . . a couple different times." In her opening statement, defense counsel said, "The real secret here is that you're going to be the judges of the credibility of who's telling the truth, who's not telling the truth." On cross-examination of the girls' mother, the State's first witness, the defense elicited testimony that the mother did not believe "that the secret is true." But on redirect, the girls' mother testified that the girls told her the same day that appellant had done "something sexual" to them; she just did not believe he had penetrated them. She thought that she and appellant's mother had taken care of things by making sure he never came back over to the house alone with the girls. Defense counsel's cross-examination of Theresa and Donna consisted of asking them to verify details unrelated to the specific allegations, such as who was present at the house the day of the alleged assaults and whether Donna used a hanger to unlock the door. The girls' testimony was inconsistent in this regard.

During closing argument, appellant's counsel again stressed the jury's role in determining credibility, pointing out discrepancies in the alleged dates and the fact that the girls' mother did not believe their secret. Counsel also emphasized

13

the testimony about various cousins who had lived in the home with the girls. Counsel argued specifically that the girls' testimony was a result of the facts not being thoroughly and accurately investigated and that the forensic interviewer asked leading questions during the interviews, "creating a story . . . and that's when [appellant's] name got filled in the blank, basically, of a cousin that fondled two girls."

Here, it is difficult to tell whether counsel's demeanor and questioning suggested to the jury that the girls fabricated their testimony before or after the interviews. Counsel clearly intimated that the girls were coached during the interviews into saying that appellant, as opposed to another person, assaulted them. It appears that counsel's defense as a whole was directed at showing that the girls were mistaken about the details of events, including when they occurred, what exactly happened, and who did it. Counsel appeared to be attacking what the girls said in the interviews as well as at trial. Accordingly, it does not appear that counsel was suggesting that any fabrication occurred after the interviews.

The girls' mother testified that the girls had told her appellant did "something sexual" to them and that she and appellant's mother took care of it. This appears to have happened fairly close in time to the assault of Theresa and the alleged assault of Donna. Several months later, Donna told one of her friends "her secret" about appellant; that friend told her own mother, who went to Donna's teacher. Donna's teacher called CPS, who arranged the interviews, in which both girls stated that appellant assaulted them. Thus, the interviews

14

occurred *after* both Theresa and Donna had made outcries, specifically about appellant. Accordingly, we conclude and hold that the trial court abused its discretion by admitting the part of Theresa's interview not related to her outcry and the entirety of Donna's interview.[5] *See id.* at 808–09.

However, after viewing the interviews in light of the entire record, we conclude and hold that the error was harmless. Donna's answers during the interview are more descriptive than her trial testimony; however, other evidence, such as the nurse examiner's notes and appellant's social history provided many of the same details. Additionally, the primary details regarding appellant as the perpetrator, that he penetrated both girls, and that they told their friends and their mother are the same as in the interviews. It is well-settled that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence, especially when the improperly admitted evidence essentially repeats victim testimony. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App.), *cert. denied*, 528 U.S. 956 (1999); *Dunn v. State*, 125 S.W.3d 610, 615 (Tex. App.—Texarkana 2003, no pet.); *Matz v. State*, 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref'd). Thus, we overrule appellant's second point.

---

[5]We note that the State has not addressed the merits of the evidentiary issues, instead addressing only harm.

15

## Conclusion

Having overruled appellant's three points, we affirm the trial court's order adjudicating him delinquent.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DELIVERED:  March 7, 2013