

# IN THE
# TENTH COURT OF APPEALS

### No. 10-15-00288-CR

**PHILIP H. MOSLEY,**

                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                    **Appellee**

_____

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2014-931-C1**

---

## MEMORANDUM OPINION

---

Philip H. Mosley was convicted of two counts of aggravated sexual assault of a child, two counts of indecency with a child by contact, and one count of indecency with a child by exposure. *See* TEX. PENAL CODE ANN. §§ 22.021, 21.11(1) & (2)(A) (West 2011). The child victim, A.G., was Mosley's step-granddaughter. Mosley was sentenced to two life terms in prison for the two counts of aggravated sexual assault of a child, two 20 year terms in prison for the two counts of indecency with a child by contact, and 10 years in

prison for the one count of indecency with a child by exposure. Because the trial court did not err in admitting or excluding evidence, Mosley's issues of a constitutional right to a defense and prosecutorial misconduct were not preserved, and there was no cumulative harm, the trial court's judgment is affirmed.

**ADMISSION OF EVIDENCE**

In his first four issues, Mosley contends the trial court erred in making various evidentiary rulings and those erroneous rulings were harmful.

We review a trial court's decision regarding the admissibility of evidence under an abuse of discretion standard and uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). If the ruling was correct on any theory of law applicable to the case, we must uphold the judgment. *See Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

*Extraneous Bad Acts*

Arguing his second issue first, Mosley contends the trial court erred in allowing testimony by A.G.'s aunt regarding extraneous bad acts performed by Mosley in the aunt's presence. The aunt was permitted to testify that when she was around 8 years old, she and her mother and her sisters moved in with Mosley. While living there, Mosley would walk around the house during the day in bikini-cut underwear with an erection; would walk around the house at night nude; would call the aunt in to speak with him

while he was in the bath tub and with only a washcloth covering his genitals; would shower with A.G.'s mother, who was also the aunt's sister, when she was a child; and would bathe A.G.'s mother. Additionally, the aunt would frequently encounter Mosley, who would be nude, at night when the aunt would go get something to eat or go to the bathroom. Some of these various acts would take place while Mosley's wife, the aunt's mother, was home.

Before this testimony was admitted, and outside the presence of the jury, the State explained that the aunt's testimony was necessary to rebut Mosley's defensive theory of fabrication and lack of opportunity. Mosley countered that those were not his defensive theories and that the evidence was pure propensity evidence which was inadmissible. Mosley argues the same on appeal.

Generally, evidence of extraneous conduct is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character. TEX. R. EVID. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). However, extraneous-conduct evidence may be admissible when it has relevance apart from character conformity such as rebuttal of a defensive theory. *Id*; *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). Specifically, the State may present extraneous-offense evidence to rebut a defensive theory of fabrication. *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008).

Mosley claims he raised no defensive theory other than that he was not guilty. He asserts that any claim of a raised defense of fabrication was, itself, a fabrication because he never asserted that A.G. deliberately lied about the allegations. However, a charge of fabrication does not require any "magic language" such as a specific assertion of lying. *Gaytan v. State*, 331 S.W.3d 218, 225 (Tex. App.—Austin 2011, pet. ref'd). It is enough that a defensive theory implies the victim made up, or fabricated, the allegations. *See Jones v. State*, No. 10-13-00006-CR, 2013 Tex. App. LEXIS 12150, *10 (Tex. App.—Waco Sept. 26, 2013, pet. ref'd) (not designated for publication). Further, it does not matter what exactly the defensive theory was; for example, whether it was fabrication, fantasy, frame-up, or retaliation. *See Bass v. State*, 270 S.W.3d 557, 653 n. 8 (Tex. Crim. App. 2008). The admissibility of the extraneous conduct evidence turns on whether it has non-character conformity relevance by rebutting any defensive theory or by making less probable defensive evidence that undermines an elemental fact. *Id*.

In this case, during voir dire, the panel was asked by Mosley if it was possible for a young person to make up a false accusation about being inappropriately touched. Every row of the panel was asked that question. In his opening statement, Mosley emphasized to the jury that they would hear about AG's "extremely imagine – active imagination…." He stressed that they should listen to her various versions of the allegations, "being locked outdoors at that time or being in a bathtub or being slapped in the face, because none of these events happened." Counsel for Mosley then stated that

Mosley "never touched that child in a sexual manner ever." He also offered a motive for the fabrication in that A.G. perceived Mosley as "mean" for "accidentally" striking A.G. in the face. Further, prior to the State's introduction of the extraneous conduct evidence, Mosley cross-examined the sexual assault nurse examiner about whether A.G. seemed "fanciful about her thoughts;" A.G.'s mother about whether it was common for A.G. to say that Mosley was mean; A.G.'s godmother about A.G.'s "flights of fancy" and "very active imagination;" and the forensic interviewer about whether A.G. had "flights of fantasy."

Based on the statements and line of questioning by Mosley, we find the trial court properly allowed the admission of extraneous-conduct evidence to rebut Mosley's defensive theory of fabrication or fantasy. Mosley's second issue is overruled.[1]

*Hearsay Exception—Prior Consistent Statement*

Mosley next argues his third issue: that the trial court erred in allowing hearsay testimony of A.G.'s great-grandmother regarding a conversation she had with A.G. After both the State and Mosley had rested their case, the State sought to recall A.G.'s great-grandmother to relate A.G.'s statement to the great-grandmother that Mosley had A.G. perform oral sex on him. Mosley objected to the testimony, contending it was an outcry

---

[1] Because we have determined that the extraneous conduct evidence was admissible to rebut the defensive theory of fabrication, we need not discuss whether it was admissible to rebut the defensive theory of opportunity or lack thereof.

statement and inadmissible and hearsay. The State countered that the testimony was not being offered as an outcry statement. Rather, it argued, the statement by A.G. to the great-grandmother was a prior consistent statement, and thus, an exception to the hearsay rule pursuant to Rule 801(e)(1)(B) of the Texas Rules of Evidence. The trial court admitted the testimony as a prior consistent statement.[2]

On appeal, Mosley contends the statement did not meet all of the requirements of Rule 801(e)(1)(B) and thus, was inadmissible hearsay. Prior consistent statements of a witness offered to rebut an express or implied charge that the witness recently fabricated the statement or acted from a recent improper influence or motive in so testifying are not hearsay.[3] *See* TEX. R. EVID. 801(e)(1)(B); *Hammons v. State*, 239 S.W.3d 798, 804 (Tex. Crim. App. 2007). The declarant of the prior consistent statement must testify and must be subject to cross-examination about the prior statement. *Id*. Under the rule, a charge of recent fabrication or improper motive may be subtly implied through tone, tenor, and demeanor during the entirety of the cross-examination. *Hammons*, 239 S.W.3d at 799.

---

[2] The great-grandmother testified that:
> [A.G.] told me that – she called her step grandfather "Poppy." She said that "Poppy" – this is the exact words that child said. She said, 'He put his pee-pee in my mouth – and something got on me,'" and then she showed me that – that he did this. He – she opened her little mouth, put her finger in it and moved it back and forth.

[3] A few months before the trial in this case, the wording of this rule was changed from "rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive" to "rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive." Neither the parties nor the comments after the rule suggest the change in the language is substantive. Thus, we will not treat the new language any differently than the old language.

Such an attack may not be immediately apparent from the specific wording of the questions asked, but becomes obvious only during the attorney's final argument. *Id*.

A.G. testified during the trial and was subject to cross-examination. Further, A.G.'s statement to the great-grandmother that Mosley had A.G. perform oral sex on him was made close to the time of her initial outcry and would have been made before the District Attorney's office became involved in the case. What Mosley argues is missing is an express or implied charge of recent fabrication or improper influence.

During A.G.'s testimony, when A.G. had trouble demonstrating what Mosley had done to her and did not want to demonstrate with the dolls to show what had happened, the prosecutor asked A.G. if she wanted the prosecutor "to show how you showed me before?" A.G. agreed to that suggestion. When the State attempted to demonstrate on the girl doll where Mosley's mouth had been on A.G., Mosley objected, stating the prosecutor was becoming a witness by testifying through her own questioning. That objection was overruled. A.G. was later able to testify on her own that she had to put her mouth on Mosley's penis and that it was Mosley's idea for her to do so.

During cross-examination, A.G. was questioned about her discussions with the prosecutor and about what the prosecutor told A.G.:

> Q: [H]ave you talked with [the prosecutor] over there? Have you talked to her a lot?
> A: No.
> Q: How many times have talked to her?...How many times this week?
> A: Three
> Q: [H]ow many times before that?

A:  One.

***

…and so when you were shown the dolls and you got asked questions that it was wrong to touch, right --… -- who told you about that? Did you learn that from [the prosecutor]?

Mosley also questioned A.G. about discussing the case with others:

…and you've talked to your mommy quite a bit, right?

***

 …Now do you remember when you were talking to other people you called your front the "bottom," and you called your back another name.  Do you remember that? …  Okay, but now you call them "private" and "bottom," right? … Okay, so -- so did somebody tell you to change those names, or did you just come up with that all yourself?  Do you remember -- … Why did you -- why do you call them "privates" now? … So you learned a lot from talking to other people about this, right?

Mosley's questioning of A.G. implied that A.G. had been told what to say before she testified.  This implication of improper influence transformed into an express accusation during Mosley's closing argument to the jury when he stated:

because, when you remember, who was supply supplying the answer for [A.G] when she was testifying?  It wasn't [A.G.].  It was the State of Texas.

***

I'm going to ask you again to recall who did the testifying yesterday with [A.G.]?  Who suggested the answers?  Who used the dolls to demonstrate the actions?  It wasn't [A.G.].  It was the State of Texas.

Based on a review of the record, we find the requirements of Rule 801(e)(1)(B) were met.  Accordingly, the trial court did not abuse its discretion in admitting the great-

grandmother's testimony as a prior consistent statement.[4]  Mosley's third issue is overruled.

*Opened Door*

Mosley next argues his first issue.  By that issue, he complains the State was erroneously permitted to introduce statements by A.G. to her mother about more instances of sexual contact by Mosley.

During the State's redirect-examination, the State questioned A.G.'s mother about additional details or instances of sexual contact by Mosley that had been revealed by A.G. over time and that had been consistently reaffirmed by A.G.  Mosley objected to the admission of these details stating they were outside the scope of the outcry statement and were hearsay.  The State replied that Mosley opened the door due to his questioning of the mother about A.G.'s consistency in telling the same story.  The trial court allowed the testimony.  A.G.'s mother testified:

> [A.G.]'s brought up the fact that, once again, about the penis on the butt, about him hitting her with that, about things going into her mouth, about stuff coming out of his private parts and getting in her hair, and just that's pretty much the gist of what she's came out and said, and she just says it consistently.

Evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence.  *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App.

---

[4] Because we find the trial court did not err in admitting the statement as a prior consistent statement, we need not discuss whether the statement was an outcry statement.

2009). A party opens the door by leaving a false impression with the jury that invites the other side to respond. *Id.* Further, questions may be asked on redirect examination to explain answers on cross-examination from which wrong inferences might be drawn by the jury. *Ikeda v. State*, 846 S.W.2d 519, 520 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd); *Rogers v. State*, 815 S.W.2d 811, 816 (Tex. App.—Amarillo 1991, no pet.).

The State argues that in light of Mosley's opening statement, his cross-examination was clearly designed to create an impression with the jury that A.G. was inconsistent in her allegations of what happened to her. In his opening statement, Mosley asked the jury "to listen to how this happened, ***her various versions of this***, being locked outdoors at that time or being in a bathtub or being slapped in the face, because none of these events happened." On cross-examination, Mosley asked A.G.'s mother

> Q. … I think that I heard from you is that her story has been consistent all long, that this has been -- she has told one -- one side of this, and that's the way she's told it?
>
> A. And she's told it to a couple of people, and it's what she says every time.
>
> Q. Okay. She's always told the same story?
>
> A. Always told the same story.

Mosley argues that the State did not meet the requirements of Rule 107, the rule of optional completeness, to be permitted to question A.G.'s mother about other incidents which, when revealed, A.G. consistently retold. The State never argued admissibility of the mother's testimony through Rule 107. Furthermore, while it is true that Rule 107 has

been recognized as encompassing the concept of opening the door, the rule is referenced when a witness testifies and leaves a false impression with the jury regarding past arrests, convictions, charges, or "trouble" with the police. *See Winegarner v. State*, 235 S.W.3d 787, 792-793 (Tex. Crim. App. 2007) (Keller, P.J., dissenting); *Fuentes v. State*, 991 S.W.2d 267, 279 (Tex. Crim. App. 1999). That is not the situation here.

Mosley also argues that no false impression was left with the jury after his cross-examination. However, in his opening statement, Mosley told the jurors to pay attention to A.G.'s various versions of what happened. And although the specific words Mosley used during cross-examination might be interpreted on the cold record as simply an inquiry whether A.G. has told the same story, it could also be interpreted, because the question was repeated, as an expression of doubt that A.G. had been consistent in telling the same story. As the Court of Criminal Appeals has noted, "much of the force of cross-examination depends upon the tone and tenor of the questioning, combined with the cross-examiner's demeanor, facial expressions, pregnant pauses, and other nonverbal cues." *Hammons v. State*, 239 S.W.3d 798, 808 (Tex. Crim. App. 2007). The trial court was in a better position than we are to determine that Mosley's cross-examination left a false impression or a wrong inference with the jury regarding A.G.'s consistency in telling the same story. Thus, because we uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement, when reviewing the record as to whether Mosley left a false impression or a wrong inference with the jury, we cannot find

the trial court abused its discretion in allowing the State on re-direct to pursue questions with A.G.'s mother regarding what instances A.G. consistently re-told.

Mosley's first issue is overruled.

### *Constitutional Right to Present a Defense*

In his fourth issue, Mosley contends the trial court erred in excluding Mosley's defensive rebuttal testimony by depriving him of his constitutional right to present a defense. After the State presented rebuttal evidence of a prior consistent statement by A.G. to her great-grandmother that Mosley had A.G. perform oral sex on him, Mosley sought to introduce a prior inconsistent statement by A.G. through Mosley's wife and A.G.'s grandmother in which A.G. denied any oral sexual contact with Mosley. Mosley argued that the wife's testimony rebutted the great-grandmother's testimony, the door had been opened to respond to the great-grandmother's testimony, that he was not offering the wife's statement for the truth of the matter asserted, and that Rule 107 of the Rules of Evidence, the rule of optional completeness, should apply. The trial court excluded the proffered testimony.

Mosley's argument on appeal, that he was denied his constitutional right to present a defense, does not comport with the argument he made at trial and has not been preserved for our review. *See* TEX. R. APP. P. 33.1; *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (comport); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)

(constitutional issue of right to present a defense not preserved). Mosley's fourth issue is overruled.

**PROSECUTORIAL MISCONDUCT**

Mosley next argues that the State committed prosecutorial misconduct when it was allegedly allowed to testify through the form of its questioning. When A.G. was testifying, the State lead A.G. with statements and questions such as, "Okay, so before you showed me like this, so Poppy's mouth –" and "Do you remember telling me that you saw him with his pants off?" Mosley objected, asserting the State was testifying though questioning which was improper. A timely objection regarding prosecutorial misconduct is necessary to preserve error for purposes of appeal. *See Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010); *Terrell v. State*, No. 10-11-00022-CR, 2011 Tex. App. LEXIS 5605, at *11 (App.—Waco 2011, pet. ref'd) (not designated for publication). The failure to make a specific objection at trial based upon prosecutorial misconduct precludes our review based on this theory. *Montoya v. State*, 43 S.W.3d 568, 572 (Tex. App.—Waco 2001, no pet.). Although there is no established definition of prosecutorial misconduct, actions by the State that rise to the level of misconduct are usually so blatant as to border on being contumacious and are clearly calculated to prejudice a defendant's right to a fair trial. *See Stahl v. State*, 749 S.W.2d 826, 831-832 (Tex. Crim. App. 1988). Mosley's objection did not suggest to the trial court that the State's questions rose to such a level as to be prosecutorial misconduct. Accordingly, Mosley's failure to make a specific

objection at trial based upon prosecutorial misconduct, precludes our review of his complaint, and his fifth issue is overruled.

**CUMULATIVE HARM**

Lastly, Mosley argues that even if we find the trial court erred in each of these issues but the errors, individually, were not harmful, the errors were cumulatively harmful and Mosley's conviction should be reversed. Sometimes erroneously referred to as cumulative error, courts have been asked to consider whether multiple errors, determined harmless when reviewed separately, may combine to produce an effect that is harmful, requiring reversal. *Haskett v. Butts*, 83 S.W.3d 213, 221 (Tex. App.—Waco 2002, pet. denied); *see Larkin v. State*, Nos. 10-06-00313-CR, 10-06-00314-CR, 2008 Tex. App. LEXIS 3499, at *34 (Tex. App.—Waco May 14, 2008, pet. ref'd) (not designated for publication). By definition, cumulative harm requires more than one error. *Haskett*, 83 S.W.3d at 221. Because we have found no errors pursuant to the issues raised, we cannot find cumulative harm. *See Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009) (non-errors do not, in their cumulative effect, cause error). Mosley's sixth issue is overruled.

**CONCLUSION**

Having overruled each issue presented for review, we affirm the trial court's judgment.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed January 25, 2017
Do not publish
[CRPM]

