In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00429-CR
_____

ELIAS GUSTAVO RODRIGUEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 359th District Court
Montgomery County, Texas
Trial Cause No. 15-11-11820-CR

MEMORANDUM OPINION

In two issues, Elias Gustavo Rodriguez appeals his conviction for aggravated

sexual assault of a child, T.T.,[1] his daughter. *See* Tex. Penal Code Ann. §

---

[1] The opinion refers to the child identified in the indictment by using a pseudonym, "T.T.," to protect the child's privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting victims of crime "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

22.021(a)(1)(B) (West Supp. 2017).[2] Rodriguez argues the trial court erred in (1) allowing T.T.'s neighbor to testify about statements made by T.T. as excited utterances, and (2) permitting the State to elicit T.T.'s prior consistent statements from two witnesses re-called to rebut Rodriguez's contention the State coerced T.T. to fabricate allegations of sexual abuse during trial. We overrule both of Rodriguez's issues and affirm the trial court's judgment.

**Background**

The State charged Rodriguez under two separate indictments for the aggravated sexual assault of a child. Rodriguez pleaded not guilty to both charges. The charges arose after Rodriquez's daughter, T.T., sought help from her neighbor, M. Hernandez, one morning before school.

When Hernandez first saw T.T, she said T.T. was emotional, nervous, scared, and crying. Hernandez asked what happened, and T.T. asked if Hernandez could take her to school. T.T. then explained she was scared and did not want to be home when Rodriguez returned. When asked why, T.T. told Hernandez she previously asked her father for permission to go to a school dance, and he agreed, "but [told T.T.] the next time when they were by themselves, that she would have to be naked

---

[2] We cite to the current version of the Texas Penal Code as any amendments since the commission of the offense do not affect the outcome of this appeal.

with him." T.T. would have been alone with her father that morning. Hernandez asked if something between T.T. and Rodriguez had happened before, and T.T. answered, "yes, that it had happened before." Hernandez took T.T. to school and alerted the school to T.T.'s allegations against Rodriguez, and an investigation ensued.

T.T. testified about asking her father for permission to attend the school dance. T.T. said that Rodriguez agreed she could go to the dance but would have to have sex with him as a result. However, at trial T.T. recanted her claims that Rodriguez previously forced her to have sex with him. Rather, she testified that on the Tuesday morning before the dance, Rodriguez attempted to have sex with her, but she got up from the bed before he could and went to the school bus. Thus, he only exposed himself to her.

After taking a break at trial, however, T.T. returned to testify and explained she told the truth originally: Rodriguez had intercourse with her. Nevertheless, T.T. clarified Rodriguez only had intercourse with her on Tuesday before the dance, not on Thursday as she previously alleged. Rodriguez testified and denied ever sexually assaulting his daughter.

Kathleen McKinney, the lead forensic scientist for the Texas Department of Public Safety Crime Laboratory in Houston, testified she performed DNA testing in

3

this case. McKinney explained the testing performed on the evidence collected revealed the presence of sperm on T.T.'s panties. Her analysis indicated it was 367 quintillion times more likely the sperm came from Rodriguez's DNA rather than an unknown individual.

The jury convicted Rodriguez of one of the two charges of aggravated sexual assault of a child, and he was assessed a fifty-year prison sentence. Rodriguez appeals and raises two issues complaining about the admission of alleged hearsay testimony.

**Excited-Utterance Exception to Hearsay Prohibition**

In his first issue, Rodriguez asserts the trial court erred by allowing Hernandez to testify about T.T.'s statements claiming the testimony was inadmissible hearsay. *See* Tex. R. Evid. 801(d), 802. The State contends the testimony was admissible under the excited-utterance exception because the hearsay statements related to "a startling event or condition, made while [T.T.] was under the stress of excitement that it caused." Tex. R. Evid. 803(2). We review a trial court's admission of evidence under the excited-utterance exception to the hearsay rule for an abuse of discretion. *See Zuliani v. State*, 97 S.W.3d 589, 595–96 (Tex. Crim. App. 2003).

Rodriguez argues his alleged statement to T.T. about sex the next time they were alone in exchange for attending the dance occurred days before T.T. went to

4

Hernandez's house; and thus, T.T.'s statements were too far removed from the event and did not qualify as an excited utterance. We disagree. The exception assumes that when the declarant makes the statement, they are not capable of the kind of reflection that would enable them to fabricate information. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). Thus, a statement is an excited utterance if the declarant made the statement while dominated by the emotions, excitement, fear, or pain of the event of condition. *McFarland v. State*, 845 S.W.3d 824, 846 (Tex. Crim. App. 1992), *overruled on other grounds, Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994). "[U]nder the excited-utterance exception, the startling event may trigger a spontaneous statement that relates to a *much earlier* incident." *McCarty v. State*, 257 S.W.3d 238, 240 (Tex. Crim. App. 2008).

The event triggering an excited utterance and the event it describes may be separated by days or even months. *See Hunt v. State*, 904 S.W.2d 813, 815–16 (Tex. App.—Fort Worth 1995, pet. ref'd). The startling event itself need not be the crime. *See id.* at 816; *see also McCarty*, 257 S.W.3d at 239. For example, in *Hunt*, a child's statement concerned an incident of abuse that occurred three months prior to the outcry. 904 S.W.2d at 815. The child made the statement after watching a news story on television that caused her great concern and fear regarding her own sexual abuse. *See id.* The court of appeals held that despite the three-month intervening time

passage, the startling nature of the television program and the victim's demeanor during her outcry rendered the statement sufficiently reliable to fall under the excited-utterance hearsay exception. *Id.*

In determining whether a statement falls under the excited-utterance exception, we consider the following non-dispositive factors:

(1) whether the exciting event is startling enough to evoke a truly spontaneous reaction from the declarant;

(2) whether the reaction to the startling event is quick enough to avoid the possibility of fabrication;

(3) whether the resulting statement is sufficiently "related to" the startling event to ensure the reliability and trustworthiness of the statement; and

(4) whether the statement was made in response to a question.

*Pickron v. State*, 515 S.W.3d 462, 465 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (citing *McCarty*, 257 S.W.3d at 241; *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001)).

The statements at issue related to Rodriguez's behavior—actions frightening T.T. to a point she was afraid to be alone with her father. Hernandez testified T.T. was in tears, nervous, and scared when she arrived at Hernandez's house, to such a degree that Hernandez suspected someone had broken into T.T.'s house while she was home alone. T.T. explained to Hernandez that Rodriguez had given her

6

permission to go to the dance in exchange for having sex with him the next time they were alone together. When T.T. ran to Hernandez's house, she was trying to get away from her house because Rodriguez would soon be home, leaving the two of them alone. When asked, T.T. admitted to Hernandez that her father had previously had sex with her. T.T. just wanted to go to school and even hid from sight while in Hernandez's car, because Rodriguez had already returned home by the time they left for school, and she was afraid her father would see her.

Taking the factors into consideration, they support the admission of T.T.'s statements as excited utterances. *See Pickron*, 515 S.W.3d at 465. The startling event triggering T.T.'s statements was Rodriguez's impending return, which would leave him alone with T.T. and allow him to sexually assault her. T.T.'s demeanor under the circumstances showed the thought of being alone with Rodriguez was exceptionally traumatic. Like *Hunt*, the events immediately preceding T.T.'s statements to Hernandez were sufficiently shocking and startling, and T.T.'s demeanor was sufficiently disturbed rendering T.T.'s statements reliable as excited utterances. *See Hunt*, 904 S.W.2d at 815.

We conclude the trial court did not abuse its discretion in determining T.T.'s statements to Hernandez were excited utterances and admitting the statements into

evidence as an exception to the rule against hearsay. *See McCarty*, 257 S.W.3d at 241. We overrule Rodriguez's first issue.

### Admission of Declarant-Witness's Prior Consistent Statements

In his second issue, Rodriguez contends the trial court erred by admitting alleged hearsay testimony when it permitted the State to elicit prior consistent statements of T.T. from two re-called witnesses. Specifically, Rodriguez argues the motive for T.T. to fabricate allegations about the assault arose before she made the statements. We review the trial court's determination of whether a prior consistent statement is admissible because the cross-examination suggested or implied an assertion of recent fabrication or improper motive for abuse of discretion. *See Hammons v. State*, 239 S.W.3d 798, 805–06 (Tex. Crim. App. 2007).

Rule 801(e)(1)(B) designates prior consistent statements made by a declarant-witness as non-hearsay when those statements are offered to rebut an express or implied charge that the declarant recently fabricated her testimony or acted from a recent improper influence or motive. *See* Tex. R. Evid. R. 801(e)(1)(B); *Klein v. State*, 273 S.W.3d 297, 304 (Tex. Crim. App. 2008). Among Rule 801(e)(1)(B)'s requirements, a prior consistent statement must be made prior to the time the supposed motive to falsify arose. *See Hammons*, 239 S.W.3d at 804. The motive to

8

falsify can arise at any time, including during the declarant-witness's direct examination. *See Klein*, 273 S.W.3d at 313.

In this case, we view the evidence in the light most favorable to the trial court's ruling admitting Forensic Interviewer Mayra Domingue's and Detective Shannon Spencer's statements. *See id.* at 304 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). "[T]here need be only a suggestion that the witness consciously altered [their] testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial." *Hammons*, 239 S.W.3d at 804 (quoting *United States v. Casoni*, 950 F.2d 893, 904 (3d Cir. 1991)).

Originally, on direct examination, T.T. denied that Rodriguez had sexually assaulted her. But, after a short recess, T.T. testified one of the two alleged acts of sexual assault did occur. During cross-examination the next day, the following exchange took place:

| [Defense Counsel:] | So, [T.T.], yesterday you took the witness stand and you started saying that your dad— that the—about your dad sexual[ly] assaulting you was a lie. That's what you started saying, right? |
| --- | --- |
| [T.T.:] | Yes. |
| [Defense Counsel:] | Then there was a break and the prosecutors took you out and there was a recess; and then when you came back, your story changed? |

| | |
|---|---|
| [T.T.:] | Yes. |
| [Defense Counsel:] | So, what did they tell you? |
| [T.T.:] | To tell the truth. |
| [Defense Counsel:] | Okay. Was anything said about you getting in trouble if you continue to testify the way you were testifying? |
| [T.T.:] | No. |

Prior to the State resting its case, the State recalled two witnesses to testify about statements that T.T. made prior to trial consistent with her testimony she was sexually assaulted by Rodriguez at least one time. After the trial court overruled Rodriguez's hearsay objection, both Domingue and Spencer confirmed T.T. told each of them details regarding Rodriguez sexually assaulting her.

During cross-examination, Rodriguez implicitly accused the State of coercing T.T. into changing her testimony. At the time the State proffered the prior consistent statements, the trial court found these statements were made prior to the time the alleged motive to falsify her testimony arose. We conclude the trial court did not abuse its discretion in admitting this evidence. *See Hammons*, 239 S.W.3d at 806. We overrule issue two and affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on April 6, 2018
Opinion Delivered October 3, 2018
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.